1  Crystal G. Howard (SBN 224627)
   SIMMONSCOOPER LLC
2  100 N. Sepulveda Blvd., Suite 1350
   El Segundo, California 90245
3  Telephone: 310-322-3555
   Facsimile: 310-322-3655
4  choward@simmonscooper.com

5  *Attorneys for Plaintiff*
   [Additional Counsel Listed on Signature Page]

6

7                **UNITED STATES DISTRICT COURT**
                 **CENTRAL DISTRICT OF CALIFORNIA**
8                    **LOS ANGELES DIVISION**

9   STEVEN H. WODKA, individually, derivatively and on    CASE NO.
    behalf of all others similarly situated,
10                                                         **CV09-02625  R (RCx)**

11                               Plaintiff,

12          - against -

    CAUSEWAY CAPITAL MANAGEMENT LLC, SARAH H.              **VERIFIED CLASS ACTION AND**
13  KETTERER, HARRY W. HARTFORD, JAMES A. DOYLE,           **DERIVATIVE COMPLAINT**
    JONATHAN P. ENG, KEVIN DURKIN, TURNER SWAN,
14  GRACIE V. FERMELIA, MARK CONE, JOHN A. G.              **and**
    GAVIN, and ERIC H. SUSSMAN,
15                                                         **JURY DEMAND**
                                 Defendants,
16
            - and -
17
    CAUSEWAY CAPITAL MANAGEMENT TRUST, doing
18  business as CAUSEWAY INTERNATIONAL VALUE
    FUND,
19
                                 Nominal Defendant.
20

21          Plaintiff alleges:

22                              **OVERVIEW**

23          1.      This lawsuit arises from criminal acts committed by the defendants

24  ("Defendants") when they unlawfully invested money entrusted to them by the plaintiff

25  ("Plaintiff") in illegal gambling businesses. These unlawful investments suffered significant

26  losses when the government began arresting principals of the gambling enterprises during a law

27  enforcement crackdown beginning in the summer of 2006.

28

                                       -1-

2.      With full knowledge of this widely-publicized crackdown and the concomitant losses that had been caused by their illegal investments – and in flagrant disregard of federal and state law – Defendants made additional illegal investments after the crackdown began.

3.      Plaintiff is a shareholder in nominal defendant Causeway Capital Management Trust (the "Trust"), through its Causeway International Value Fund (the "Fund").

4.      Defendants caused the Trust to illegally invest, repeatedly and over a significant period of time, in entities whose primary businesses constituted illegal gambling under the laws of one or more of the United States. The market value of these investments plunged when law enforcement officials began arresting principals of, and otherwise targeting for prosecution, such illegal gambling businesses. Defendants' illegal investments, all of which were purchased for the Fund's portfolio, directly injured Plaintiff and other investors in the Fund because the value of shares in the Fund is calculated daily on the basis of the net asset value of the Fund's portfolio. Each dollar lost by Defendants' investments in illegal gambling businesses resulted in a dollar loss to the Fund portfolio and to the investors in the Fund on a *pro rata* basis.

5.      Defendants are the individuals and entities responsible for causing the Trust to make the illegal investments that led to Plaintiff's injuries.

6.      Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), as well as common law claims for breach of fiduciary duty and negligence.

7.      Defendants, each of whom is a person or entity employed by or associated with the Trust, conducted the affairs of the Trust through a pattern of racketeering. Specifically, each of the Defendants knowingly developed and implemented (or conspired to develop and implement) an investment strategy pursuant to which the Trust was caused repeatedly and over a significant period of time to purchase shares in "illegal gambling businesses" as that term is used in 18 U.S.C. § 1955, which makes it a felony to "own all or part of an illegal gambling business." By causing the Trust to purchase stock in illegal gambling businesses, Defendants caused the Trust to become an owner of illegal gambling businesses and thereby to violate 18 U.S.C. § 1955.

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

1    8.    A violation of 18 U.S.C. § 1955 is a predicate crime under RICO. 18 U.S.C.

2    § 1961(1)(B). Thus, by causing the Trust to purchase stock of illegal gambling businesses

3    repeatedly and over a significant period of time, Defendants conducted the affairs of the Trust

4    through a pattern of racketeering in violation of 18 U.S.C. § 1962(c). They also conspired to

5    violate 18 U.S.C. §1962(c) within the meaning of 18 U.S.C. § 1962(d).

6    9.    In addition to violating RICO, Defendants breached their common law

7    fiduciary duties and their duty of care to Plaintiff and others who invested in the Fund.

8    Accordingly, Plaintiff also asserts common law claims for breach of fiduciary duty and

9    negligence.

10    10.    Because Defendants' unlawful conduct injured the Trust itself, Plaintiff has

11    named the Trust as a nominal defendant, and Plaintiff asserts derivative claims on behalf of the

12    Trust.

13    11.    Because Defendants' wrongdoing injured numerous investors in the Fund in

14    exactly the same way, this action is brought as a class action.

15                                    THE PARTIES

16    **Plaintiff**

17    12.    Plaintiff Steven H. Wodka ("Plaintiff") is a resident of the State of New Jersey.

18    He first acquired shares in the Trust (through his investment in the Fund) in 2004 for investment

19    purposes as part of his IRA portfolio. He still owns such shares.

20    13.    Plaintiff sues derivatively on behalf of the Trust.

21    14.    Alternatively, Plaintiff seeks to represent a class of investors in the Trust (the

22    "Class") who first invested in the Fund before July 17, 2006 and still owned their shares after July

23    17, 2006 (the "Class Period").

24    **Nominal Defendant**

25    15.    Nominal defendant Causeway Capital Management Trust (the "Trust") is a

26    statutory trust organized under the laws of the State of Delaware. It has a principal place of

27    business at 11111 Santa Monica Boulevard, Suite 1500, Los Angeles, California 90025.

28

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

16.     The Trust is a "series" mutual fund. A series mutual fund is one that has two or more portfolios of securities, each offering a separate series or class of stock to investors. Each portfolio of a series mutual fund generally has different investment objectives, policies, practices, and risks. The shareholders of each portfolio do not participate in the investment results of any other portfolio and must look solely to the assets of their portfolio for most purposes, including redemption, liquidation, earnings, and capital appreciation. Each series of stock represents a different group of stockholders with an interest in a segregated portfolio of securities. Each separate portfolio is generally referred to as a "fund."

17.     The Trust offers three portfolios to the investing public, including (a) the Fund; (b) Causeway Global Value Fund (the "Global Fund"); and (c) Causeway Emerging Markets Fund (the "Emerging Markets Fund"). These three portfolios are not separate legal entities. Rather, the investors in all three portfolios own different series of shares in the same legal entity: the Trust.

18.     Upon information and belief, Defendants made all of the Trust's investments in illegal gambling through the Fund portfolio. None were made through the Global Fund or the Emerging Markets Fund.

**Defendants**

19.     Defendant Causeway Capital Management LLC ("CCM") is an investment management company that controls the Trust and its three fund portfolios. CCM is the investment advisor to the Trust and selects and appoints the Trust's executives and its entire board of trustees. CCM also serves as the investment advisor to all three of the Trust's fund portfolios. CCM derives its revenue from fees paid by the Trust. Those fees are allocated among the three portfolios of the Trust at the discretion of the executives, principals and trustees who control CCM and the Trust, some of whom are named as defendants herein. At all times relevant to this action, Defendants allocated to the Fund – and not to the Global Fund or the Emerging Markets Fund – virtually all of the fees that the Trust paid to CCM. As a result, the fees that the Fund pays to CCM subsidize the other two portfolios of the Trust.

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

20.     CCM is a limited liability company with a principal place of business at 11111 Santa Monica Boulevard, Suite 1500, Los Angeles, California 90025.

21.     Defendant Sarah H. Ketterer ("Ketterer") is the Chief Executive Officer and co-founder and member of CCM. She is also a portfolio manager of the Trust and during all relevant times exercised operational or managerial oversight over the portfolio holdings of the Trust, including the investment strategy complained of herein. Ketterer also owns approximately 47% of the shares of the Global Fund through the Sarah H. Ketterer Living Trust.

22.     Harry W. Hartford ("Hartford") is the President and co-founder and member of CCM. He is also a portfolio manager of the Trust and during all relevant times exercised operational or managerial oversight over the portfolio holdings of the Trust, including the investment strategy complained of herein.

23.     James A. Doyle ("Doyle") is a portfolio manager of the Trust and a director of CCM since the time that CCM was co-founded by Ketterer and Hartford in June 2001. During all relevant times, Doyle exercised operational or managerial oversight over the portfolio holdings of the Trust, including the investment strategy complained of herein.

24.     Jonathan P. Eng ("Eng") is a portfolio manager of the Trust and a director of CCM. During all relevant times, Eng exercised operational or managerial oversight over the portfolio holdings of the Trust, including the investment strategy complained of herein.

25.     Kevin Durkin ("Durkin") is a portfolio manager of the Trust and a director of CCM. During all relevant times, Durkin exercised operational or managerial oversight over the portfolio holdings of the Trust, including the investment strategy complained of herein.

26.     Turner Swan ("Swan") is and has been the President and Secretary of the Trust and a member of CCM since 2001. During all relevant times, Swan was primarily responsible for the day-to-day management of the Trust and for implementing the investment strategy complained of herein.

27.     Gracie V. Fermelia ("Fermelia") is and has been the Chief Compliance Officer of the Trust and the Chief Operating Officer and a member of CCM since 2001. During all

relevant times, Fermelia exercised operational or managerial oversight over the portfolio holdings of the Trust, including the investment strategy complained of herein.

28.     Mark Cone ("Cone") is a Managing Partner of CCM and its Chief Marketing Officer. Cone also serves a trustee of the Trust. During all relevant times, Cone was responsible for the day-to-day management of the Trust and for implementing the strategy complained of herein.

29.     Defendants John A. G. Gavin ("Gavin") and Eric H. Sussman ("Sussman") are members of the board of trustees of the Trust.

30.     Each of the trustees of the Trust allowed the Trust to invest or continue its investments in illegal gambling businesses through the Fund portfolio, as complained of herein. Each of the trustees had separate and independent fiduciary duties to act in the best interests of the Trust, each of the Trust's separate fund portfolios (including the Fund), and their investors. To an even greater degree than the directors of entities that are not mutual funds, trustees of mutual funds are responsible for protecting the funds they serve under a unique watchdog role.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1337 (commerce regulation) and 1367(a) (supplemental jurisdiction) and 18 U.S.C. § 1964 (RICO).

32.     Venue is proper in this district pursuant to 28 U S.C. § 1391 and 18 U.S.C. § 1965 (RICO) because some of the acts and practices complained of herein occurred in substantial part within this district and because one or more Defendants reside, has an agent, or transacts their affairs within this district.

33.     In connection with the acts and omissions alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including without limitation, the mails, interstate telephone communications, the Internet, and the facilities of the national securities markets and exchanges.

VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND

1

## FACTS COMMON TO ALL CLAIMS

2    34.    The Trust is an open-ended investment company whose activities affect

3 interstate or foreign commerce.

4    35.    The Trust is an enterprise within the meaning of RICO.

5    36.    Each of the Defendants is a person employed by or associated with the Trust.

6    37.    Each of the Defendants had operational or managerial control over the Trust.

7    38.    Each of the Defendants knowingly developed and implemented (or conspired

8 to develop and implement) an investment strategy pursuant to which the Trust was caused

9 repeatedly and over a significant period of time to purchase shares in an "illegal gambling

10 business" as that term is used in 18 U.S.C. § 1955.

11    39.    In or about April 2006, Defendants began purchasing millions of shares of

12 PartyGaming Plc ("PartyGaming").

13    40.    In a June 2005 prospectus, in connection with an initial public offering ("IPO")

14 of its securities, PartyGaming disclosed that "in many countries, including the United States, the

15 Group's activities are considered to be illegal by relevant authorities." In the same prospectus,

16 PartyGaming disclosed that it "generates most of its revenues from customers in the US

17 (approximately 87 per cent. in the first quarter of 2005)."

18    41.    The PartyGaming prospectus also informed prospective investors:

19    The US Department of Justice considers that companies offering online gaming to
20    US residents are in violation of existing US federal laws, including (but not limited
      to) the Wire Act, the Illegal Gambling Business Act, the Paraphernalia Act and the
21    Travel Act.

22    …

23    There are criminal and civil sanctions for breach of these federal and state
      prohibitions, which include the possibility of significant fines, injunctions, claims
24    for damages and imprisonment of relevant individuals (such as directors), as well
      as the repayment of losses suffered by US residents.
25

26    …

27    In April 2004, the Group [PartyGaming] was informed by Discovery
      Communications, the television and media company that owns the Travel Channel,
28

-7-
**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

that US marshals had seized over $2 million of the Group's funds from Discovery Communications.

...

Despite the Department of Justice's stance on advertising of online gaming operations, PartyGaming continues to advertise its real money sites in the US through a number of media, including television, print and sponsorship.

42.     Shortly after PartyGaming's IPO began in or about June 2005, but before Defendants caused the Trust to make its investments in PartyGaming, major media sources widely reported that PartyGaming was an illegal gambling business. For example, on June 26, 2005, *The New York Times* reported that, for PartyGaming, the "potential illegalities aren't just a secret hidden in its business plan – they are the centerpiece of its business plan."

43.     News reports on both sides of the Atlantic also disclosed that PartyGaming violated criminal laws in the US.

44.     Prior to the investments complained of herein, Defendants each knew, or was reckless in not knowing, that PartyGaming was taking bets from gamblers in the United States and that law enforcement agencies in the United States considered its activities to be illegal gambling.

45.     On or before June 30, 2006, in multiple transactions, Defendants caused the Trust, through the Fund portfolio, to purchase almost 16 million shares of PartyGaming at a cost of approximately $34 million.

46.     Widely circulated reports that asset managers intentionally disregarded the illegality of investing in criminal gambling businesses correctly and accurately described Defendants' investment strategy for the Fund. For example, a December 25, 2005 article in *The New York Times* accurately described Defendants' investment strategy when it reported that "investment houses have taken the position that they indeed know there are legal risks involved in investing in offshore [Internet] casinos, but that the risks are outweighed by the benefits of owning shares in growing, highly profitable businesses. Those shares can give a lift to mutual

-8-

1  funds and other types of investments sold by the investment houses, meaning bigger returns for

2  clients."

3     47.    On June 1, 2006, a US grand jury indicted London-based BetOnSports Plc

4  ("BetOnSports") – another unlawful Internet gambling business similar to PartyGaming – for

5  racketeering, mail fraud and running an illegal gambling enterprise because it was accepting

6  wagers from US bettors in violation of US law. The indictment was filed under seal, so investors

7  did not learn about it until July 16, 2006 when its Chief Executive Officer, David Carruthers, was

8  arrested. On April 1, 2009, Carruthers pleaded guilty to illegal gambling activity with a penalty of

9  up to 33 months in federal prison.

10     48.    Beginning after the public disclosures of the BetOnSports indictment, the share

11  prices of publicly held gambling companies that had been taking bets from gamblers in the US –

12  including PartyGaming and another unlawful gambling business in which Defendants had caused

13  the Trust to invest – fell dramatically.

14     49.    After learning of the substantial losses in the Trust's investments, Defendants

15  caused the Trust to purchase additional shares of PartyGaming.

16     50.    On or about September 7, 2006, Peter Dicks, the Chairman of another one of

17  PartyGaming's competitors, Sportingbet Plc, was arrested in New York.

18     51.    After the public disclosures of the Dicks arrest, the share prices of publicly

19  held gambling companies that had been taking bets from gamblers in the US – including

20  PartyGaming and another unlawful gambling business in which Defendants had caused the Trust

21  to invest – fell further.

22     52.    After learning of these additional losses in the Trust's investments, Defendants

23  caused the Trust to purchase additional shares of PartyGaming.

24     53.    By September 30, 2006, Defendants had caused the Trust to purchase a total of

25  23,257,081 shares of PartyGaming.

26     54.    As their losses mounted, Defendants caused the Trust to purchase additional

27  shares of PartyGaming, finally accumulating approximately 35,454,565 shares between October

28  and December 2006.

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

55.    The United States passed legislation in October 2006 that gave law enforcement authorities greater means to enforce existing criminal statutes against the illegal gambling businesses in which Defendants were causing the Trust to invest. That law, known as the Unlawful Internet Gambling Enforcement Act of 2006 (the "UIGE"), 31 U.S.C. § 5361 *et seq.*, was passed by Congress in September 2006 and signed into law by the President on October 13, 2006. At the time of passage of the UIGE, PartyGaming shut down its remaining illegal gambling operations in the US.

56.    Defendants caused the Trust to sell its shares in PartyGaming only after the PartyGaming ceased taking bets from gamblers in the US. By that time, PartyGaming's share value had plummeted over 80% to approximately $0.60 per share. The 80% drop corresponds to the proportion of PartyGaming's illegal revenue from the United States prior to PartyGaming's withdrawal from the US market. PartyGaming's illegal revenue from the US was approximately 87% at the time of its June 2005 initial public offering and 78% at the time that it withdrew from the US market. There is no other material cause for the drop in PartyGaming's share price other than the PartyGaming's loss of illegal US-based gambling revenue. That drop was the direct, proximate, natural, probable and reasonably foreseeable consequence of Defendants' actions in causing the Trust to invest in illegal gambling companies.

57.    On December 16, 2008, one of the co-founders of PartyGaming, Anarug Dikshit, pleaded guilty in the United States District Court for the Southern District of New York to engaging, through PartyGaming, in illegal Internet gambling and agreed to forfeit $300 million to the US government.

58.    Each of the Defendants, including the Trustees, knew or was reckless in not knowing that PartyGaming and the other illegal gambling companies in which they caused the Trust to invest were taking bets from gamblers in the US.

59.    In its Annual Report for the fiscal year ended September 30, 2007, the Trust disclosed that its investments in PartyGaming was a "significant detractor" to the performance of the Fund's entire portfolio of investments.

VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND

60. Defendants also caused the Trust to purchase shares in NETeller Plc ("NETeller") beginning in 2006. NETeller first traded on the London Stock Exchange's Alternative Investment Market beginning in April 2004. NETeller disclosed to potential investors in its April 8, 2004 prospectus that its operations violated US federal and state gambling laws.

61. By April 31, 2006, Defendants had caused the Trust to purchase 46,312 shares of NETeller. Defendants caused the Trust to continue to purchase additional shares of NETeller even after the law enforcement crackdown began in the summer of 2006. By September 30, 2006, Defendants had caused the Trust to purchase 1,203,112 shares of NETeller.

62. On January 1, 2007, the United States filed criminal charges against NETeller founder Stephen Lawrence. The Information charged him with conspiracy to violate various gambling-related laws, including New York State Penal Law, Article 225, and Title 18, United States Code, Section 1955. The government also proceeded against NETeller itself.

63. NETeller admitted criminal wrongdoing and forfeited $136 million in criminal proceeds as part of a Deferred Prosecution Agreement.

64. Defendants knew or were reckless in not knowing prior to causing the Trust to make its first investment in NETeller that NETeller was an illegal gambling company.

65. Before Defendants first caused the Trust to invest in PartyGaming and NETeller, it was public knowledge in the United States, based on various news media reports and public press releases from the United States Department of Justice, that:

- In 1997, a Missouri court held that Interactive Gaming & Communications Corp. violated state law by accepting bets through the Internet.

- Jay Cohen was convicted in February 2000 of running an internet sports book. On appeal, the Second Circuit held that Cohen and his organization, an Antiguan corporation that took bets over the Internet from gamblers in New York, violated the Wire Gambling Act, 18 U.S.C. § 1084, whenever there "was a telephone call or an internet transmission between New York and [defendant] in Antigua" that facilitated a bet or wager on a sporting event. *U.S. v. Cohen*, 260 F.3d 68 (2d Cir. 2001).

- In *People ex rel. Vacco v. World Interactive Gaming Corp.*, 185 Misc.2d 852 (N.Y. Co. Sup. Ct. 2000), the court held that Cohen's company engaged in illegal gambling activity in violation of New York state law.

-11-
**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

- In October 2001, New Jersey filed suit against various online gaming entities, including Sportingbet, for violating New Jersey's gambling laws.

- In October 2001, Gold Medal Sports, an online sportsbook located in Curacao, and its principals, pleaded guilty to racketeering in a criminal case brought by the United States Attorney for the Western District of Wisconsin.

- In April 2002, based on pressure brought by the Attorney General of New York, PayPal, the world's largest electronic payment processor, agreed to halt financial transactions on behalf of online gambling companies such as Sportingbet, BWin and PartyGaming that were taking bets from gamblers in New York in violation of New York state law. Banks, including Citibank, also settled claims brought by the New York State Attorney General by agreeing to halt payment processing for unlawful Internet gambling businesses.

- In March 2003, the United States brought suit against PayPal in Missouri for facilitating unlawful gambling activity. In July 2005, PayPal agreed to pay the federal government $10 million in penalties.

- On June 11, 2003, the DOJ issued a public warning letter that "Internet gambling and offshore sportsbook operations that accept bets from customers in the United States violate Sections 1084, 1952, and 1955 of [Title] 18 of the United States Code, each of which is a Class E felony. Additionally, pursuant to [18 U.S.C. § 2], any person or entity who aids or abets in the commission of any of the above-listed offenses is punishable as a principal violator of those statutes."

- The DOJ seized millions of dollars from cable TV stations that accepted advertising money from such illegal Internet gambling businesses, including over $6 million from the Discovery Channel in April 2004.

- In 2006, Sporting News agreed to pay a $7.2 million fine because it promoted unlawful gambling businesses by publishing ads for Internet gambling sites.

66.    Section 1955 of Title 18 makes it unlawful to "finance ... or own all or part of an illegal gambling business."

67.    One who purchases stock of a gambling business finances and becomes a part owner of such business. Thus, each time Defendants caused the Trust to purchase stock of an illegal gambling business, Defendants caused the Trust to become an owner of an illegal gambling business in violation of Section 1955 of the Criminal Code.

68.    Each purchase of shares by the Trust in the gambling company also caused the Trust to finance an illegal gambling business.

69.    Defendants caused the Trust repeatedly to violate 18 U.S.C. § 1955 within a ten-year period by causing the Trust to purchase shares of "illegal gambling businesses" within the meaning of § 1955, including PartyGaming and NETeller.

70.    At the time Defendants caused the Trust to purchase stock in illegal gambling companies, such companies were illegal gambling businesses because the businesses of the companies (a) violated the laws of one or more of the United States; (b) involved five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and (c) had been or remained in substantially continuous operation for a period in excess of thirty days or had a gross revenue of $2,000 in any single day.

71.    In causing the Trust to purchase stock of illegal gambling businesses, each of the Defendants exercised operational or managerial control over the Trust.

72.    Defendants' activities causing the Trust to make investments in illegal gambling businesses constituted an open-ended, continuous pattern of racketeering activity under 28 U.S.C. § 1962(c).

73.    Defendants conducted or caused to be conducted, or were reckless in failing to conduct or to cause to be conducted, due diligence before the Trust purchased stock in illegal gambling businesses. Before making any investment, CCM conducts thorough company-specific fundamental analysis, including extensive external and internal research, company visits and proprietary quantitative valuations. Accordingly, Defendants each knew, or is deemed to have known, that they were causing the Trust to purchase stock of companies that were taking bets from gamblers in the US.

74.    Once federal and state law enforcement commenced the crackdown on illegal Internet gambling businesses in 2006, the market re-priced the value of the shares of the illegal gambling businesses to exclude in whole or in part revenues derived from the US.

75.    As a proximate result of Defendants' acts in causing the Trust to invest in illegal gambling businesses, Plaintiff was injured.

76.    In addition to conducting or participating in the conduct of the Trust's activities through a pattern of racketeering, Defendants also agreed and conspired to violate

1  18 U.S.C. § 1962(c) by conducting or participating in the conduct of the affairs of the Trust
2  through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(d).
3  Specifically:

4  (a) Defendants agreed to cause the Trust to invest in illegal gambling
5  businesses.

6  (b) In furtherance of such conspiracy, and pursuant to the foregoing agreement
7  and scheme, one or more of the Defendants did in fact cause the Trust repeatedly
8  and over a significant period of time or in an open-ended scheme, to purchase
9  stock in illegal gambling businesses that were illegal under the laws of one or
10  more of the United States.

11  77.  Plaintiff has been injured in his property through Defendants' violation of 18
12  U.S.C. § 1962.

13  78.  Plaintiff's injuries were proximately caused by Defendants' racketeering
14  activities and the overt acts taken in furtherance of Defendants' racketeering conspiracy.

15  79.  Plaintiff's injuries were the direct, proximate, natural, probable and reasonably
16  foreseeable consequence of Defendants' unlawful investments in illegal gambling businesses.

17  80.  Defendants' actions breached their fiduciary duties to the Trust.

18  81.  Defendants' actions also breached their fiduciary duties to each of the
19  shareholders of the Trust with an interest in the Fund.

20  82.  Defendants' actions also constituted negligence in that they breached a duty of
21  care owed to the Trust.

22  83.  Defendants' actions also constituted negligence in that they breached a duty of
23  care owed to each of the shareholders of the Trust with an interest in the Fund.

24  84.  Plaintiff has been injured as a result of Defendants' racketeering, breaches of
25  fiduciary duties and negligence.

26  85.  The Trust has been injured as a result of Defendants' racketeering, breach of
27  fiduciary duty and negligence.

28

-14-
**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

## ALLEGATIONS COMMON TO ALL DERIVATIVE CLAIMS

86.   Plaintiff was a shareholder of the Trust at the time of the transactions of which he complains.

87.   Plaintiff is a shareholder in the Trust at the present time.

88.   This action is not a collusive one to confer jurisdiction on this Court which it would not otherwise have.

89.   No effort has been made to obtain the desired action from the board of trustees of the Trust because (a) the entire board of trustees of the Trust have an inherent conflict in determining a demand against Defendants; and (b) in addition, a majority of the board of trustees have a disabling interest because they are exposed to a substantial likelihood of criminal and civil liability. In particular:

(a) The entirety of the board of trustees of the Trust is inherently conflicted because any decision to vindicate the rights of investors in the Fund against CCM would be contrary to the interests of shareholders of other funds on whose behalf the trustees also serve and to whom they owe a duty of undivided loyalty;

(b) The defendant trustees, who compose a majority of the board of trustees, also have disabling interests and lack independence because they face a substantial likelihood of criminal and civil liability for wrongs that constitute, among other things, crimes, bad faith, gross negligence, willful misfeasance, reckless disregard of duty, and violation of Defendants' duty of loyalty.

90.   The board of trustees for the Trust have fiduciary duties to independently represent the best interests of the investors in each of the funds that compose the Trust. The Trustees therefore are charged with separate and independent fiduciary duties to the investors in the Fund as well as to the investors in the two other funds that constitute the Trust, to wit: the Emerging Markets Fund and the Global Fund.

91.   The interests of the investors in the Global Fund and the Emerging Markets Fund are contrary to the interests of the investors in the Fund for the claims set forth in this complaint against Defendants. The interests of the investors in the Global Fund and the Emerging

1   Markets Fund are antagonistic to those of the investors in the Fund because the fees paid to CCM
2   by the Trust and allocated by Defendants to the Fund subsidize the two other funds. For example,
3   the fees that the Fund paid to CCM were used by CCM to cover the organization costs of the
4   Global Fund and the Emerging Markets Fund, as disclosed by the Trust in its filings to the
5   Securities and Exchange Commission.

6          92.    For the fiscal year ended September 30, 2008, the Trust paid approximately
7   $34 million in fees to CCM that Defendants allocated and charged to the Fund. The Emerging
8   Markets Fund and its shareholders were responsible for only $334,000 in fees. Of that amount,
9   20% (or $70,000) was subsidized by the fees that Defendants allocated and charged to the Fund
10  instead of the Emerging Markets Fund. The Fund also subsidized 100% of the management fees
11  for which the Global Fund was responsible. The Global Fund should have – but did not – pay its
12  share of CCM's management fees because Defendants instead allocated and charged the entirety
13  of the Global Fund's expenses to the Fund. In addition, the Fund also subsidized approximately
14  66% of the Global Fund's expenses other than management fees. Upon information and belief,
15  this subsidization of the Global Fund and the Emerging Markets Fund by the Fund has occurred
16  throughout the period of time at issue in this action.

17         93.    Of the total fees that the Trust pays to CCM for managing all three funds that
18  compose the Trust, 98% is allocated to the Fund. Were the Plaintiff to prevail in this litigation,
19  CCM would be liable to forfeit an amount equal to three times all of the fees it has received on
20  account of its management of the Fund's portfolio from the time that CCM first caused the Fund
21  to purchase shares in illegal gambling businesses. In that event, the subsidy in favor of the other
22  two funds would cease to exist, and the other two funds would be required to pay to CCM the
23  amounts previously subsidized by the Fund. As a result, it is contrary to the interests of investors
24  in the other two funds for Plaintiff to succeed in this action. All of the trustees therefore have an
25  irreconcilable conflict of interest with respect to this action because they owe a duty of undivided
26  loyalty to two groups of investors whose interests directly and irreconcilably conflict.

27         94.    Because of the inherent conflict of interest faced by the entire board of trustees
28  of the Trust, demand on them to bring suit against Defendants would be futile as a matter of law.

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

95.     In addition, a majority of the board of trustees also have a disabling interest in assessing a demand to sue Defendants – including themselves – on behalf of the Trust because they face a substantial likelihood of personal criminal or civil liability.

96.     To an even greater degree than the directors of ordinary corporations, mutual fund trustees, including the Trustees, are responsible for protecting a mutual funds' investors under a unique watchdog role. Thus, each of the trustees had a special duty to ensure that the Trust with respect to which they served a watchdog role did not invest in illegal gambling businesses.

97.     The trustees also had a duty to ensure that the Trust had proper control mechanisms to ensure that it did not make any investments in any illegal gambling businesses.

98.     As part of its role as investment adviser, CCM selects the persons who serve on the Trust's board of trustees, including the trustees. Accordingly, the relationship between CCM, the trustees and the Trust is fraught with conflicts of interest.

99.     Because of the widely-publicized red flags waived by international media over the illegality of investments in companies such as PartyGaming and NETeller, the trustees knew or were reckless in not knowing that the Trust's investments in such companies were illegal.

100.    Because a demand in this case would require the trustees to cause the Trust to sue CCM and the trustee defendants, the trustees are inherently conflicted from exercising independent and disinterested business judgment.

101.    Therefore, pre-suit demand upon the trustees would have been futile because a majority of the trustees could not have properly exercised his independent and disinterested business judgment in responding to a demand. Not only do the trustee defendants face a substantial threat of civil and criminal liability, but the relationship between the trustees, CCM, and the Fund creates a potential conflict of interest that creates a strong presumption against board independence and disinterest.

102.    Pre-suit demand upon the trustees is also excused because the wrongdoing of which Plaintiff complains in this complaint constitutes inherently illegal criminal activity that is *ultra vires* and a *per se* violation of the business judgment rule.

-17-
**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

CLASS ALLEGATIONS

103. Plaintiff seeks to represent a class of investors in the Trust who invested in the Fund during the Class Period.

104. Excluded from the Class are Defendants, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

105. The requirements of Fed. R. Civ. P. 23(a) are met because:

(a) The members of the Class are so numerous that joinder of all members is impracticable.

(b) There are questions of law and fact common to the Class, including whether:

(i)     Defendants' acts and conduct as alleged herein violated RICO;

(ii)    Defendants breached their fiduciary and other duties to Plaintiff;

(iii)   Defendants committed negligence;

(iv)    Defendants' wrongful conduct proximately caused injury to Plaintiff; and

(v)     Defendants are required to forfeit all fees, commissions or other profits received from the time that they first violated their fiduciary duties to Plaintiff.

(c) Plaintiff's claims are typical of the claims of the members of the Class because all members of the Class were injured by Defendants' wrongful conduct in exactly the same way.

(d) Plaintiff will fairly and adequately protect the interests of the Class because Plaintiff's attorneys are qualified, experienced, and generally able to conduct the proposed litigation. Moreover, Plaintiff has no interests antagonistic to those of the Class.

106. The requirements of Fed. R. Civ. P. 23(b)(3) are met because:

-18-

VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND

(a) A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because:

(i)     The Class members' individual interests are small, such that they would have no interest in individually controlling the prosecution of separate actions;

(ii)     No other litigation concerning this controversy has been commenced;

(iii)     It would be desirable to concentrate the litigation of these claims in this forum; and

(iv)     It is unlikely that there will be significant difficulties in managing this case as a class action.

**FIRST CLAIM FOR RELIEF**
**(DERIVATIVE CLAIM)**
**(CIVIL RICO, 18 U.S.C. § 1962(c))**

107.     Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

108.     This claim is brought by Plaintiff derivatively on behalf of the Trust pursuant to RICO, 18 U.S.C. §§ 1961(c).

109.     The Trust is an enterprise engaged in and whose activities affect interstate and foreign commerce. Defendants are the trustees, investment advisers and executives of the Trust and therefore occupy managerial or operational positions with respect to the racketeering acts alleged herein.

110.     Defendants agreed to and did conduct or participate in the conduct of the Trust's affairs through a pattern of racketeering activity and for the unlawful purpose of investing in illegal gambling businesses in violation of 18 U.S.C. § 1962(c).

111.     Pursuant to and in furtherance of their unlawful scheme, Defendants committed multiple racketeering acts by causing the Trust to make numerous investments in illegal gambling businesses on several occasions extending over a year.

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

112.   The foregoing acts constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

113.   As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), the Trust has been injured in its business and property.

**SECOND CLAIM FOR RELIEF**
**(DERIVATIVE CLAIM)**
**(CIVIL RICO, 18 U.S.C. § 1962(d))**

114.   Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

115.   This claim is brought by Plaintiff derivatively on behalf of the Trust pursuant to 18 U.S.C. § 1961(d).

116.   Each Defendant violated 18 U.S.C. § 1962(d) by conspiring and agreeing to conduct or participate in the conduct of the Trust's affairs through a pattern of racketeering activity and for the unlawful purpose of investing in illegal gambling businesses, in violation of 18 U.S.C. § 1962(c).

117.   Pursuant to and in furtherance of their unlawful conspiracy, one or more Defendants committed one or more overt acts in furtherance of the conspiracy.

118.   As a direct and proximate result of Defendants' conspiracy and the overt acts in furtherance of such conspiracy, the Trust has been injured in its business and property.

**THIRD CLAIM FOR RELIEF**
**(DERIVATIVE CLAIM)**
**(BREACH OF FIDUCIARY DUTY)**

119.   Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

120.   This claim is brought by Plaintiff on behalf of the Trust.

121.   Defendants have breached their fiduciary duties to the Trust by causing the Trust to invest in illegal gambling businesses.

122.   The Trust has been injured as a direct, proximate and foreseeable result of such breach on the part of Defendants and has suffered substantial damages thereby.

-20-

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

**FOURTH CLAIM FOR RELIEF**
**(DERIVATIVE CLAIM)**
**(NEGLIGENCE)**

123. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

124. This claim is brought by Plaintiff on behalf of the Trust.

125. The Fund has been injured as a direct, proximate and foreseeable result of Defendants' negligence and has suffered substantial damages thereby.

**FIFTH CLAIM FOR RELIEF**
**(DERIVATIVE CLAIM)**
**(WASTE)**

126. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

127. This claim is brought by Plaintiff on behalf of the Trust.

128. Defendants each had a duty to the Trust to prevent waste of the Trust assets.

129. Defendants each breached their duties to prevent the waste of the Trust's assets.

130. The Trust has been injured as a direct, proximate and foreseeable result of such breach on the part of the Defendants and has suffered substantial damages thereby.

**SIXTH CLAIM FOR RELIEF**
**(INDIVIDUAL AND CLASS CLAIMS)**
**(CIVIL RICO, 18 U.S.C. § 1962(C))**

131. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

132. This claim is brought by Plaintiff individually and on behalf of the Class pursuant to RICO, 18 U.S.C. §§ 1961, *et seq*.

133. As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Plaintiff and the Class have been injured in their business or property.

**SEVENTH CLAIM FOR RELIEF**
**(INDIVIDUAL AND CLASS CLAIMS)**
**(CIVIL RICO , 18 U.S.C. § 1962(d))**

134. Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

-21-
**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

135.   This claim is brought by Plaintiff individually and on behalf of the Class pursuant to RICO, 18 U.S.C. §§ 1961, *et seq.*, against Defendants.

136.   As a direct and proximate result of Defendants' conspiracy and the overt acts in furtherance of such conspiracy, Plaintiff and the Class have been injured in their business or property.

**EIGHTH CLAIM FOR RELIEF**
**(INDIVIDUAL AND CLASS CLAIMS)**
**(BREACH OF FIDUCIARY DUTY)**

137.   Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

138.   This claim is brought by Plaintiff individually and on behalf of the Class against all Defendants.

139.   Defendants owe a fiduciary duty to the Trust's shareholders.

140.   Defendants have breached their fiduciary duties to Plaintiff and the Class by causing the Trust to invest in illegal gambling businesses.

141.   Plaintiff and the Class have been injured as a direct, proximate and foreseeable result of such breach on the part of Defendants and have suffered substantial damages thereby, including the loss in value of their investments and the payment, directly or indirectly, of commissions, fees and other compensation received by Defendants from the time that they first breached their fiduciary duties to Plaintiff and the Class.

142.   Plaintiff, individually and on behalf of the Class, also seeks special injuries not belonging to the Trust. In particular, Plaintiff and the Class seek the recoupment of fees, commissions and other compensation that Plaintiff and each Class member paid to Defendants that are separate and distinct from those paid by the other shareholders of the Trust, including the investors in the other mutual fund portfolios that compose the Trust.

**NINTH CLAIM FOR RELIEF**
**(INDIVIDUAL AND CLASS CLAIMS)**
**(NEGLIGENCE)**

143.   Plaintiff repeats and realleges all paragraphs above as if fully set forth herein.

144.   This claim is brought by Plaintiff individually and on behalf of the Class against all Defendants.

-22-

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

145. Defendants owe a duty to the Trust's shareholders to exercise reasonable care with respect the Trust's investments.

146. Defendants breached their duty of care to the Trust's shareholders by causing the Trust to invest in illegal gambling businesses.

147. As a proximate result of Defendants' negligence, Plaintiff and the Class have been damaged.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that, upon the trial of this action, Plaintiff recover for himself, on behalf of the Class, on behalf of nominal defendant, from each Defendant, jointly and severally, as follows:

a) Compensatory damages for the Trust representing the reduction in value of its investments for the Fund portfolio resulting from Defendants' wrongful conduct;

b) Compensatory damages for individual shareholders representing the reduction in value of their investments resulting from Defendants' wrongful conduct;

c) Forfeiture and disgorgement of any commissions, fees or profits received by Defendants from the time of their first wrongful conduct;

d) Treble damages;

e) Punitive damages;

f) Recovery of Plaintiff's attorneys' fees, expert witness fees, and costs and disbursements of suit;

g) Pre-judgment and post-judgment interest; and

h) Such other and further relief to which Plaintiff is deemed entitled by the Court and/or the jury.

VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND

1

## JURY DEMAND

2         Plaintiff demands a trial by jury on all issues to triable.

3   Dated: April *15*, 2009

4

5                             Crystal G. Howard (SBN 224627)

6                             SIMMONSCOOPER LLC

7                             100 N. Sepulveda Blvd., Suite 1350
El Segundo, California 90245

8                             Telephone: 310-322-3555
Facsimile: 310-322-3655

9                             choward@simmonscooper.com

10                                 and

11                             Thomas I. Sheridan, III
Andrea Bierstein

12                             HANLY CONROY BIERSTEIN

13                             SHERIDAN FISHER & HAYES, LLP
112 Madison Avenue

14                             New York, NY 10016-7416
Telephone: 212-784-6400

15                             tsheridan@hanlyconroy.com

16                                 and

17                             Joseph A. Aughtman, Esq.

18                             Scarlette M. Tuley, Esq.

19                             BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.

20                           218 Commerce Street
Post Office Box 4160

21                           Montgomery, AL 36104
Telephone: 334.269.2343

22                           jay.aughtman@beaslyallen.com

23                           scarlette.tuley@beasleyallen.com

24                           *Attorneys for Plaintiff*

25

26

27

28

-24-

**VERIFIED CLASS ACTION AND DERIVATIVE COMPLAINT AND JURY DEMAND**

## VERIFICATION

Steven H. Wodka, pursuant to 28 U.S.C. § 1746, hereby verifies, under penalty of perjury, that the foregoing complaint is true and correct to the best of his knowledge information and belief, formed after reasonable inquiry.

Executed: April 9, 2009

Steven H. Wodka

SIGNATURE   VERIFIED

04/09/09

OFFICIAL SEAL
NASEEM HOSSAIN
NOTARY PUBLIC-NEW JERSEY
COUNTY OF MONMOUTH
My Commission Expires May 2, 2013

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY**

This case has been assigned to District Judge Manuel Real and the assigned discovery Magistrate Judge is Rosalyn M. Chapman.

The case number on all documents filed with the Court should read as follows:

## CV09- 2625 R (RCx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

Unless otherwise ordered, the United States District Judge assigned to this case will hear and determine all discovery related motions.

====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division** 312 N. Spring St., Rm. G-8 Los Angeles, CA 90012 | [ ] **Southern Division** 411 West Fourth St., Rm. 1-053 Santa Ana, CA 92701-4516 | [ ] **Eastern Division** 3470 Twelfth St., Rm. 134 Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)   NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated, PLAINTIFF(S) <br><br> v. <br><br> CAUSEWAY CAPITAL MANAGEMENT LLC, et *See Attached* <br><br> DEFENDANT(S). | CASE NUMBER <br><br> **CV09-02625 R** (RCx) <br><br><br> **SUMMONS** |

TO: DEFENDANT(S): SARAH H. KETTERER _____

    A lawsuit has been filed against you.

    Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Crystal G. Howard _____, whose address is 100 N. Sepulveda Blvd., Suite 1350, El Segundo, California 90245 _____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: APR 1 5 2009 _____

By: _____ **LA'REE HORN**

*Deputy Clerk*

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

1192

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated, | CAUSEWAY CAPITAL MANAGEMENT LLC, et al. (see attached list) |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| SimmonsCooper LLC 100 N. Sepulveda Blvd., Suite 1350, El Segundo, CA 90245 (310) 322-3555 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☑ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☑ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes   ☐ No   ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
18 U.S.C. §§ 1961-68 (RICO); See Rider 1 for brief description of cause

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS — PERSONAL INJURY | TORTS — PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

| FOR OFFICE USE ONLY: | Case Number: | **CV09-02625** |
|---|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes

If yes, list case number(s): _____

**VII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

Check all boxes that apply)
☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**VIII. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | New Jersey |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| See Rider 2 | |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| All of plaintiff's claims arose, inter alia, in Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

SIGNATURE OF ATTORNEY (OR PRO PER): _____    Date   4/15/09

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

ATTACHMENT TO CIVIL COVER SHEET

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

| | |
|---|---|
| STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>    - against -<br><br>CAUSEWAY CAPITAL MANAGEMENT LLC, SARAH H. KETTERER, HARRY W. HARTFORD, JAMES A. DOYLE, JONATHAN P. ENG, KEVIN DURKIN, TURNER SWAN, GRACIE V. FERMELIA, MARK CONE, JOHN A. G. GAVIN, and ERIC H. SUSSMAN,<br>          Defendants,<br><br>    - and -<br><br>CAUSEWAY CAPITAL MANAGEMENT TRUST, doing business as CAUSEWAY INTERNATIONAL VALUE FUND,<br>          Nominal<br>          Defendant. | CASE NO. |

## LIST OF DEFENDANTS

Causeway Capital Management LLC
Sarah H. Ketterer
Harry W. Hartford
James A. Doyle
Jonathan P. Eng
Kevin Durkin
Turner Swan
Gracie V. Fermelia
Mark Cone
John A. G. Gavin
Eric H. Sussman
Causeway Capital Management Trust, doing business as Causeway International Value Fund

ATTACHMENT TO CIVIL COVER SHEET

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>    - against -<br><br>CAUSEWAY CAPITAL MANAGEMENT LLC, SARAH H. KETTERER, HARRY W. HARTFORD, JAMES A. DOYLE, JONATHAN P. ENG, KEVIN DURKIN, TURNER SWAN, GRACIE V. FERMELIA, MARK CONE, JOHN A. G. GAVIN, and ERIC H. SUSSMAN,<br><br>                Defendants,<br><br>    - and -<br><br>CAUSEWAY CAPITAL MANAGEMENT TRUST, doing business as CAUSEWAY INTERNATIONAL VALUE FUND,<br><br>                Nominal<br>                Defendant. | |

### VI
### Rider 1 for Civil Cover Sheet

Plaintiff is a shareholder in a mutual fund that illegally invested in one or more entities whose primary business constituted illegal gambling. The market value of those investments fell when law enforcement began a crackdown on the illegal gambling businesses, and that, in turn, resulted in injury to Plaintiff. Plaintiff asserts derivative and class action claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO"), as well as common law claims for breach of fiduciary duty, negligence, and waste against the individuals and entities responsible for causing the funds to make the illegal investments.

| | |
|---|---|
| ATTACHMENT TO CIVIL COVER SHEET | |

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>CAUSEWAY CAPITAL MANAGEMENT LLC, SARAH H. KETTERER, HARRY W. HARTFORD, JAMES A. DOYLE, JONATHAN P. ENG, KEVIN DURKIN, TURNER SWAN, GRACIE V. FERMELIA, MARK CONE, JOHN A. G. GAVIN, and ERIC H. SUSSMAN,<br><br>Defendants,<br><br>- and -<br><br>CAUSEWAY CAPITAL MANAGEMENT TRUST, doing business as CAUSEWAY INTERNATIONAL VALUE FUND,<br><br>Nominal Defendant. | CASE NO. |

## IX (b)

### RIDER 2 TO CIVIL COVER SHEET

1. Nominal defendant Causeway Capital Management Trust (the "Trust") is a statutory trust organized under the laws of the State of Delaware. It has a principal place of business at 11111 Santa Monica Boulevard, Suite 1500, Los Angeles, California 90025.

2. Defendant Causeway Capital Management LLC ("CCM") is a limited liability company with a principal place of business at 11111 Santa Monica Boulevard, Suite 1500, Los Angeles, California 90025.

3. The individual defendants may all be served at 11111 Santa Monica Boulevard, Suite 1500, Los Angeles, California 90025. Their residence addresses are unknown to plaintiff.

(a) Defendant Sarah H. Ketterer ("Ketterer") is the Chief Executive Officer and co-founder and member of CCM.

(b) Defendant Harry W. Hartford ("Hartford") is the President and co-founder and member of CCM.

(c) Defendant James A. Doyle ("Doyle") is a portfolio manager of the Trust and a director of CCM.

(d) Defendant Jonathan P. Eng ("Eng") is a portfolio manager of the Trust and a director of CCM.

(e) Defendant Kevin Durkin ("Durkin") is a portfolio manager of the Trust and a director of CCM.

(f) Defendant Turner Swan ("Swan") is and has been the President and Secretary of the Trust and a member of CCM since 2001.

(g) Defendant Gracie V. Fermelia ("Fermelia") is the Chief Compliance Officer of the Trust and the Chief Operating Officer and a member of CCM since 2001.

(h) Defendant Mark Cone ("Cone") is a Managing Partner of CCM and its Chief Marketing Officer.

(i) Defendants John A. G. Gavin ("Gavin") and Eric H. Sussman ("Sussman") are members of the board of trustees of the Trust.

-2-
**RIDER 2 TO CIVIL COVER SHEET**