1  JOHN W. SPIEGEL (State Bar No. 078935)
   John.Spiegel@mto.com
2  MIRIAM KIM (State Bar No. 238230)
   Miriam.Kim@mto.com
3  MUNGER, TOLLES & OLSON LLP
   355 South Grand Avenue, 35th Floor
4  Los Angeles, CA 90071-1560
   Telephone: (213) 683-9100
5  Facsimile: (213) 687-3702

6  Attorneys for Defendants
   John A. G. Gavin and Eric H. Sussman
7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                    CENTRAL DIVISION

11

| | |
|---|---|
| 12  STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated, | CASE NO. CV-09-02625 R (RCx) |
| 13 | |
| 14              Plaintiff, | **JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| 15           - against - | |
| 16  CAUSEWAY CAPITAL MANAGEMENT LLC, SARA H. KETTERER, HARRY W. HARTFORD, JAMES A. DOYLE, JONATHAN P. ENG, KEVIN DURKIN, TURNER SWAN, GRACIE V. FERMELIA, MARK CONE, JOHN A. G. GAVIN, and ERIC H. SUSSMAN, | [Request for Judicial Notice and Proposed Order filed concurrently herewith] |
| 17 | |
| 18 | |
| 19 | Date:    September 21, 2009 |
| 20              Defendants, | Time:    10:00 a.m. Judge:   Honorable Manuel L. Real Ctrm:    8 |
| 21           - and - | |
| 22  CAUSEWAY CAPITAL MANAGEMENT TRUST, doing business as CAUSEWAY INTERNATIONAL VALUE FUND, | |
| 23 | |
| 24 | |
| 25              Nominal Defendant. | |

26

27

28

8002949

1  TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2  PLEASE TAKE NOTICE THAT on September 21, 2009 at 10:00 a.m., or as

3  soon thereafter as counsel may be heard, in the courtroom of the Honorable Manuel

4  Real, located at the U.S. Courthouse, 312 N. Spring Street, Los Angeles, California,

5  Defendants John A. G. Gavin and Eric H. Sussman will and hereby do move for an

6  order dismissing Plaintiff's Verified Class Action and Derivative Complaint in its

7  entirety. This motion is brought pursuant to Federal Rule of Civil Procedure

8  12(b)(6) and 23.1 on the independent grounds that Plaintiff has not pleaded

9  particularized facts sufficient to excuse presuit demand on the Causeway Capital

10  Management Trust ("Trust") Board of Trustees under Federal Rule of Civil

11  Procedure 23.1 and applicable Delaware law, and has failed to state a cause of

12  action upon which relief can be granted under the Trust's Declaration of Trust, the

13  Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, and

14  applicable Delaware law.

15  This motion is supported by this Notice of Motion and Motion, the

16  Memorandum of Points and Authorities attached hereto, the Request for Judicial

17  Notice and Proposed Order filed concurrently herewith, any reply papers that may

18  be filed, oral argument of counsel, the complete files and records in this action, and

19  such other matters as the Court may consider.

20  DATED:   June 26, 2009                    MUNGER, TOLLES & OLSON LLP

21

22                                            By: /s/John W. Spiegel
23                                                 JOHN W. SPIEGEL

24                                            Attorneys for Defendants
                                              John A. G. Gavin and Eric H. Sussman
25

26

27

28

8002949                          - 1 -          JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                NOTICE OF MOTION AND MOTION TO DISMISS

CV-09-02625 R (RCX)

1

# TABLE OF CONTENTS

2

**Page**

3   I.   INTRODUCTION ......................................................................... 1

4   II.  ALLEGATIONS OF THE COMPLAINT ........................................ 4

5        A.   Parties .............................................................................. 4

6        B.   The Trust Purchases Publicly-Traded Securities ................. 5

7        C.   Failure To Make Pre-Suit Demand .................................... 7

8   III. ARGUMENT ............................................................................. 7

9        A.   The Complaint Must Be Dismissed Because Any Alleged Injury
              Is Derivative, And Plaintiff Failed To Plead Demand Futility ........... 7

10            1.   Any Alleged Harm Is Derivative Of Harm To The Trust .......... 7

11            2.   Plaintiff's Attempt To Transform His Derivative- Claims
12                 Into Direct Claims Fails ............................................... 9

13            3.   Plaintiff Admits That He Failed To Make A Demand,
                   And He Has Failed To Plead Demand Futility ........................ 11

14                 a.   Demand Is Not Excused Due To Purported
15                      Conflicts With Other Funds ............................... 14

16                 b.   Plaintiff's Conclusory Allegation That The
                        Trustees Face A Threat Of Liability Does Not
17                      Excuse Demand ................................................ 15

18                 c.   Plaintiff Does Not Allege Any Other Valid Basis
19                      To Excuse Demand .......................................... 17

20       B.   The Complaint Fails To State An Actionable Claim Against Mr.
              Gavin And Mr. Sussman Under The Declaration Of Trust ............... 19

21       C.   The Complaint Fails to State A Cognizable Claim Under Federal
22            Or State Law ................................................................... 22

23            1.   Plaintiff Fails To State Actionable Conduct Under RICO ....... 22

24            2.   Plaintiff Fails to Plead Necessary Elements Of The State
                   Law Claims Under Delaware Law ............................... 23

25            3.   The Complaint Fails to State A Claim For Corporate
26                 Waste ........................................................... 24

27   IV.  CONCLUSION ...................................................................... 25

28

- i -

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Adams-Lundy v. Association of Professional Flight Attendants*,
844 F.2d 245 (5th Cir. 1988) ................................................................22

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ..............................................2, 16, 18, 20

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................16, 20

*Boyce v. AIM Management Group, Inc.*,
Civ. No. H-04-2587, 2006 WL 4671324 (S.D. Tex. Sept. 29, 2006) ...............13

*Hamid v. Price Waterhouse*,
51 F.3d 1411 (9th Cir. 1995) ................................................................22

*Hogan v. Baker*,
No. Civ.A. 305CV0073P, 2005 WL 1949476
(N.D. Tex. Aug. 12, 2005) .........................................................9, 10, 11

*Holmes v. Securities Investor Protection Corp.*,
503 U.S. 258, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992) ...........................23

*In re Abbott Labs. Derivative Shareholders Litig.*,
325 F.3d 795 (7th Cir. 2003) ................................................................22

*In re Am. Express Co. Shareholder Litig.*,
39 F.3d 395 (2d Cir. 1994) ..................................................................23

*In re American Mut. Funds Fee Litig.*,
No. CV 04-5593-GAFRNBX, 2005 WL 3989803
(C.D. Cal. Dec. 16, 2005) .........................................................9, 12, 18

*In re Eaton Vance Mutual Funds Fee Litig.*,
380 F. Supp. 2d 222 (S.D.N.Y. 2005) ....................................................13

*In re Evergreen Mutual Funds Fee Litigation*,
423 F. Supp. 2d 249 (S.D.N.Y. 2006) .............................................11, 15

*In re Goldman Sachs Mutual Funds Fee Litig.*,
No. 04 Civ. 2567 (NRB), 2006 WL 126772
(S.D.N.Y. Jan 17, 2006) .....................................................10, 11, 13, 18

*In re Lord Abbett Mutual Funds Fee Litig.*,
407 F. Supp. 2d. 616 (D.N.J. 2005).........................................................9

*In re Mut. Funds Inv. Litig.*,
384 F. Supp. 2d ....................................................13, 16, 17, 21

*In re Sagent Technology, Inc.*,
278 F. Supp. 2d 1079 (N.D. Cal. 2003)....................................................20

*In re Silicon Graphics Inc. Securities Litig.*,
183 F.3d 970 (9th Cir. 1999)..........................................................11, 17

*In re Verestar, Inc.*,
343 B.R. 444 (Bankr. S.D.N.Y. 2006) ....................................................20

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Kamen v. Kemper Fin. Servs., Inc.,*
500 U.S. 90, 111 S. Ct. 1711, 114 L. Ed. 2d 152 (1991) ................................. 7

4

*Kauffman v. Dreyfus Fund, Inc.,*
434 F.2d 727 (3d Cir. 1970) ................................................................. 9, 10

5

*Krantz v. Prudential Investments Fund Management LLC,*
305 F.3d 140 (3d Cir. 2002) ................................................................. 15

6

*Lapidus v. Hecht,*
232 F.3d 679 (9th Cir. 2000) ................................................................. 9

7

*Manson v. Stacescu,*
11 F.3d 1127 (2d Cir. 1993) ................................................................. 22

8

*Marina Point Development Associates v. United States,*
364 F. Supp. 2d 1144 (C.D. Cal. 2005) ................................................. 3

9

10

*McBrearty v. The Vanguard Group, Inc.,*
No. 08 Civ. 7650 (DLC), 2009 WL 875220
(S.D.N.Y. April 2, 2009) ................................................................. 1, 3, 23

11

*McCall v. Scott,*
239 F.3d 808 (6th Cir. 2001) ................................................................. 22

12

13

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.,*
540 F.3d 1049 (9th Cir. 2008) ................................................................. 19

14

*Migdal v. Rowe Price-Fleming Int'l, Inc.,*
248 F.3d 321 (4th Cir. 2001) ................................................................. 15

15

*Mutchka v. Harris,*
373 F. Supp. 2d 1021 (C.D. Cal. 2005) ................................................. 9, 10

16

*Ove v. Gwinn,*
264 F.3d 817 (9th Cir. 2001) ................................................................. 25

17

18

*Rand v. Anaconda-Ericsson, Inc.,*
794 F.2d 843 (2d Cir. 1986) ................................................................. 22, 23

19

*Roeder v. Alpha Indus., Inc.,*
814 F.2d 22 (1st Cir. 1987) ................................................................. 22

20

*Sparling v. Hoffman Constr. Co., Inc.,*
864 F.2d 635 (9th Cir. 1988) ................................................................. 22

21

*Strigliabotti v. Franklin Resources, Inc.,*
No. C 04-00883 SI, 2005 WL 645529 (N.D. Cal. Mar. 7, 2005) ................. 10

22

23

*Warren v. Manufacturers Nat'l Bank of Detroit,*
759 F.2d 542 (6th Cir. 1985) ................................................................. 23

24

25

26

27

28

JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
NOTICE OF MOTION AND MOTION TO DISMISS

CV-09-02625 R (RCX)

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

### STATE CASES

*Andreae v. Andreae,*
   Civ. A. No. 11905, 1992 WL 43924 (Del. Ch. Mar. 5, 1992) .......................... 18

*Aronson v. Lewis,*
   473 A.2d 805 (Del. 1984)....................................................12, 15, 18, 19

*Bokat v. Getty Oil Co.,*
   262 A.2d 246 (Del. 1970) ......................................................................... 8

*Brehm v. Eisner,*
   746 A.2d 244 (Del. 2000) ....................................................................... 25

*Emerald Partners v. Berlin,*
   787 A.2d 85 (Del. 2001)................................................................... 19, 20

*In re Baxter Int'l., Inc. S'holders Litig.,*
   654 A.2d 1268 (Del. Ch. 1995) ............................................................... 16

*In re Citigroup Inc. Shareholder Derivative Litig.,*
   964 A.2d 106 (Del. Ch. 2009) ........................................................... 16, 21

*In re infoUSA Shareholders Litig.,*
   953 A.2d 963 (Del. Ch. 2007) ................................................................. 18

*Kramer v. Western Pacific Industries, Inc.,*
   546 A.2d 348 (Del. 1988)..................................................................... 2, 8

*Law v. Law,*
   753 A.2d 443 (Del. 2000) ....................................................................... 24

*Malpiede v. Townson,*
   780 A.2d 1075 (Del. 2001)................................................................... 2, 19

*Rales v. Blasband,*
   634 A.2d 927 (Del. 1993)........................................................2, 12, 15, 19

*Sarin v. Ochsner,*
   48 Mass. App. Ct. 421, 721 N.E.2d 932 (Mass. App. Ct. 2000)........................ 9

*Seminaris v. Landa,*
   662 A.2d 1350 (Del. Ch. 1995) ............................................................... 17

*Sims v. Stanley,*
   945 A.2d 1168, 2008 WL 853538 (Del. Apr. 1, 2008) .................................... 23

*Spiegel v. Buntrock,*
   571 A.2d 767 (Del. 1990) ....................................................................... 15

*Steiner v. Myerson,*
   Civ. A. No. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995) ...................... 25

*Tooley v. Donaldson, Lufkin & Jenrette,*
   845 A.2d 1031 (Del. 2004)..............................................................passim

*White v. Panic,*
   783 A.2d 543 (Del. 2001)..............................................................4, 24, 25

8002949

JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
NOTICE OF MOTION AND MOTION TO DISMISS

CV-09-02625 R (RCX)

1

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Wilmington Trust Co. v. Coulter,*
   200 A.2d 441 (Del. 1964)..........................................................24

*Wood v. Baum,*
   953 A.2d 136 (Del. 2008)....................................................16, 21

*Zerby v. Allied Signal, Inc.,*
   No. 00C-07-068-FSS, 2001 WL 112052 (Del. Feb. 2, 2001)..........................23

## FEDERAL STATUTES

15 U.S.C. § 80a *et seq*............................................................5, 12, 13

18 U.S.C. § 1955.......................................................................5, 23

18 U.S.C. § 1961 *et seq.* ...................................................................1

18 U.S.C. § 1962(c) ........................................................................23

28 U.S.C. § 1367(c)(3) .....................................................................25

## CODES

Del. Code Ann. tit. 12, § 3302(a) .......................................................3, 23

Del. Code Ann. tit. 12, § 3302(c) ...................................................3, 23, 24

Del. Code Ann. tit. 12, § 3801(d) ..........................................................12

Del. Code Ann. tit. 12, § 3803 .............................................................19

Del. Code Ann. tit. 12, § 3806(c) ..........................................................19

Del. Code Ann. tit. 12, § 3816(a) ..........................................................12

Mass. Gen. Laws ch. 182, § 2B ..............................................................13

## FEDERAL RULES

Federal Rule of Civil Procedure 12(b)(6).................................................1, 20

Federal Rule of Civil Procedure 23.1 ...................................................11, 15

## STATE RULES

Local Rule 11-5.2 ...........................................................................1

8002949

JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
NOTICE OF MOTION AND MOTION TO DISMISS
CV-09-02625 R (RCX)

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendants John A. G. Gavin and Eric H. Sussman are two independent, outside trustees of Nominal Defendant Causeway Capital Management Trust ("Trust"), a Delaware mutual fund.  Mr. Gavin and Mr. Sussman respectfully submit this Memorandum in support of their motion to dismiss. [1]

This action is another of a series of unsuccessful shareholder challenges to mutual fund investments in Internet gaming.  Plaintiff, a shareholder in the Trust, alleges that the Trust is liable to shareholders for purchasing publicly-traded shares of Internet gaming businesses, which declined in value after government authorities began a "crackdown" on Internet gaming in 2006.  (Compl. ¶ 1.)  Shareholders of other mutual funds made the same allegations in three separate lawsuits filed in the Southern District of New York by Plaintiff's counsel here, Hanley Conroy Bierstein Sheridan Fisher & Hayes LLP.[2]  Like the plaintiffs in those actions, Plaintiff alleges here that, through the investments in Internet gaming, the defendants committed violations of the Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ("RICO"), and state law torts for breach of fiduciary duty, negligence, and waste.

The claims against Mr. Gavin and Mr. Sussman fail on several independent

---

[1] Mr. Gavin was the ambassador to Mexico in 1981 to 1986, and has been the chairman of an international consulting and investment holding company since 1968. Request for Judicial Notice filed concurrently herewith ("RJN") Ex. 2 at 22 (Causeway Capital Management Trust Form N-CSR, Filed Dec. 5, 2008 ("2008 Annual Report")); RJN Ex. 7 at 62 (April 7, 1986 *San Jose Mercury News* Article). Mr. Sussman is a tenured lecturer at the University of California, Los Angeles. RJN Ex. 2 at 22. Citations to pages of the exhibits to the RJN are to the consecutive pagination placed at the bottom of the pages pursuant to Local Rule 11-5.2.

[2] *See McBrearty v. The Vanguard Group, Inc.*, No. 08 Civ. 7650 (DLC), 2009 WL 875220 (S.D.N.Y. April 2, 2009) (dismissal of RICO claims with prejudice), *appeal pending*, Case No. 09-1445-cv (2d Cir.); RJN, Ex. 5 (*Seidl v. American Century Cos., Inc.*, Order filed April 28, 2009, No. 08 Civ. 8857 (DLC) (S.D.N.Y.)); RJN, Ex. 6 (*Gamoran v. Neuberger Berman Management LLC*, Stipulation and Order for Voluntary Dismissal filed May 19, 2009, No. 08-cv-10807-DLC (S.D.N.Y.)).

1   grounds.  First, the Complaint should be dismissed because any alleged injury is

2   derivative of harm to the Trust.  Except for Plaintiff's waste claim, which is brought

3   only derivatively, each claim is asserted derivatively and, in the alternative, as

4   individual and putative class claims.  In order for a shareholder to assert claims

5   directly, rather than in a derivative capacity, he or she must allege an injury

6   independent of any harm to the corporation.  *Tooley v. Donaldson, Lufkin &*

7   *Jenrette*, 845 A.2d 1031, 1039 (Del. 2004).  Where, as here, shareholders claim a

8   diminution in value of their shares in proportion to their share ownership, the

9   shareholders' claimed injury is derivative of harm suffered by the corporation and

10   the claim therefore belongs to the corporation.  *Kramer v. Western Pacific*

11   *Industries, Inc.*, 546 A.2d 348, 351-53 (Del. 1988).  Because Plaintiff failed to

12   make a demand on the Board of Trustees, as required before bringing derivative

13   claims, or plead particularized facts establishing that demand would be futile, the

14   Court should dismiss the Complaint in its entirety.  *See Rales v. Blasband*, 634

15   A.2d 927, 934 (Del. 1993).

16        Second, even if the Court finds that demand is excused, the Complaint should

17   be dismissed for failure to state a claim under the Declaration of Trust and

18   applicable federal and state law.

19        **Declaration of Trust**.  The Complaint fails to state a claim against Mr.

20   Gavin or Mr. Sussman under the Trust's Declaration of Trust, which eliminates

21   trustees' personal liability for conduct unless the trustees allegedly acted "by reason

22   of willful misfeasance, bad faith, gross negligence, or reckless disregard."  (RJN,

23   Ex. 4 (Decl. of Trust, § 8.1).)  *See Malpiede v. Townson*, 780 A.2d 1075, 1093 (Del.

24   2001).  The Complaint sets forth no allegations of any specific actions or omissions

25   by Mr. Gavin or Mr. Sussman.  Although Plaintiff makes conclusory allegations

26   that the trustees "allowed" the Trust to invest in allegedly "illegal gambling

27   businesses" (Compl. ¶ 30.), conclusory allegations are not entitled to be assumed

28   true.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009).  There are no well-

8002949                                    - 2 -         JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                          NOTICE OF MOTION AND MOTION TO DISMISS

1    pleaded allegations in the Complaint concerning Mr. Gavin and Mr. Sussman's

2    involvement in implementing the Fund's investment strategy.  Indeed, there are no

3    allegations that Mr. Gavin or Mr. Sussman were aware of or approved the securities

4    purchases at issue, much less acted with the degree of culpability required under the

5    exculpatory provision.  Plaintiff also does not allege that either Mr. Gavin or Mr.

6    Sussman was on notice that the government would take actions against Internet

7    gaming businesses.  Accordingly, the claims against Mr. Gavin and Mr. Sussman

8    should be dismissed.

9        **RICO Claims (Counts I-II and VI-VII)**.  As explained in the Memorandum

10   of Points and Authorities in Support of Motion of Causeway Capital Management

11   LLC ("CCM Defendants' Memorandum"), Plaintiff's RICO claims fail for lack of

12   proximate causation because any alleged injury was "by reason" of the publicity

13   surrounding the government's actions against Internet gaming businesses, and not

14   because of any investment decisions by the Fund.  *See McBrearty v. The Vanguard*

15   *Group, Inc.,* No. 08 Civ. 7650 (DLC), 2009 WL 875220, at *1 (S.D.N.Y. April 2,

16   2009), *appeal pending*, Case No. 09-1445-cv (2d Cir.).  Plaintiff's attempt to

17   manufacture federal jurisdiction by alleging meritless RICO claims should be

18   rejected.  *See Marina Point Development Associates v. United States*, 364 F. Supp.

19   2d 1144, 1147-48, n.3 (C.D. Cal. 2005) (Real, J.) ("RICO was intended to combat

20   organized crime, not to provide a federal cause of action and treble damages to

21   every tort plaintiff.").[3]

22       **State Law Claims (Counts III-V and VIII-IX)**.  Plaintiff also failed to

23   plead necessary elements of the claims against Mr. Gavin and Mr. Sussman for

24   breach of fiduciary duty, negligence, and waste.  Under Delaware law governing

25   improper investments by fiduciaries, trustees cannot be liable unless the fiduciary

26   knew or should have known about the risk at issue, and failed to act with reasonable

27   _____

      [3] Mr. Gavin and Mr. Sussman join in the CCM Defendants' Memorandum and
28   incorporate it herein by reference.

8002949                                    -3-           JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                         NOTICE OF MOTION AND MOTION TO DISMISS

                                                                        CV-09-02625 R (RCX)

1  prudence under the circumstances.  Del. Code Ann. tit. 12, § 3302(a), (c).  The

2  Complaint makes no allegation that Mr. Gavin or Mr. Sussman knew or should

3  have foreseen that the government would take actions against Internet gaming.

4  Plaintiff also fails to set forth a plausible allegation of waste, because there was

5  consideration received by the Trust, regardless of how risky the investments were in

6  hindsight. *See White v. Panic*, 783 A.2d 543, 554 (Del. 2001).

7  **II.    ALLEGATIONS OF THE COMPLAINT**

8        **A.    Parties**

9        Causeway Capital Management Trust is a statutory trust organized under

10  Delaware law. (Compl. ¶ 15.)  It offers three fund portfolios:  the International

11  Value Fund (the "Fund"), the Global Value Fund (the "Global Fund"), and the

12  Emerging Markets Fund (the "Emerging Markets Fund").  (Compl. ¶¶ 16-17.)

13  Plaintiff Steven H. Wodka is a shareholder in the Trust through the Fund.  (Compl.

14  ¶ 3.)  Plaintiff sues derivatively on behalf of the Trust, and, in the alternative,

15  purports to represent a class of investors "who first invested in the Fund before July

16  17, 2006 and still owned their shares after July 17, 2006."  (Compl. ¶¶ 13-14.)

17        Defendant Causeway Capital Management LLC ("CCM") is the investment

18  adviser to the Trust and its three fund portfolios.  (Compl. ¶ 19.)  The Complaint

19  names as defendants eight individual officers or employees of CCM who allegedly

20  oversaw or implemented investment strategy for the fund portfolios.  (Compl.

21  ¶¶ 21-28.)

22        The Trust has a five-member Board of Trustees, which is responsible for its

23  administration.  The Trust's Declaration of Trust limits the personal liability of

24  individual trustees "for any act, omission, or obligation of the Trust or any Trustee"

25  except "by reason of willful misfeasance, bad faith, gross negligence, or reckless

26  disregard" of their duties.  (RJN, Ex. 4 (Decl. of Trust, § 8.1).)  Defendants John A.

27  G. Gavin and Eric H. Sussman are members of the Board.  (Compl. ¶ 29.)  Plaintiff

28

1   does not allege that Mr. Gavin or Mr. Sussman has any ties to CCM or the

2   management of the Trust beyond their service on the Board.  Indeed, four of the

3   five trustees, including Mr. Gavin and Mr. Sussman, are "independent" under the

4   Investment Company Act of 1940, 15 U.S.C. §§ 80a *et seq.*[4]  If Plaintiff had made a

5   demand on the Board at the time of the filing of the Complaint, the demand would

6   have been considered by the following trustees:

7        1.    John A. G. Gavin has been the chairman of Gamma Holdings, an

8   international consulting and investment holding company, since 1968.  From 1981

9   to 1986, he served as the United States ambassador to Mexico.[5]

10       2.    Eric H. Sussman is a tenured lecturer at the UCLA Anderson Graduate

11  School of Management, where he has taught since 1995.  He is also the President of

12  Amber Capital, Inc., a real estate investment and financial planning company.[6]

13       3.    Lawry J. Meister is the President of Steaven Jones Development

14  Company, Inc., a real estate firm.  (RJN, Ex. 3 at 30 (SAI).)

15       4.    John R. Graham is a film composer and previously was Senior Vice

16  President at The Walt Disney Company and Lehman Brothers Inc. (*Id.*)

17       5.    Mark Cone, who is named in this action, is Chief Marketing Officer of

18  CCM.  (Compl. ¶ 28.)

19  **B.    The Trust Purchases Publicly-Traded Securities**

20       Plaintiff alleges that, beginning in 2006, Defendants "allowed" or "caused"

21  the Trust to purchase stock in Internet gaming companies through the Fund in

22  violation of 18 U.S.C. § 1955, which prohibits financing or owning an "illegal

23

---

24  [4] *See* RJN, Ex. 3 (Statement of Additional Information ("SAI"), at 30-31); RJN, Ex.
25  2 (Causeway International Value Fund Annual Report for fiscal year ending
    September 30, 2008 ("2008 Annual Report"), at 22, 24 n.5).

26  [5] *See* RJN, Ex. 3 at 30 (SAI); RJN, Ex. 1 (Causeway International Value Fund
    Annual Report for fiscal year ending September 30, 2007 ("2007 Annual Report"),
27  at 14); Ex. 7 (April 7, 1986 Article).

28  [6] Ex. 3 at 30 (SAI); RJN, Ex. 1 at 14 (2007 Annual Report).

8002949                    - 5 -         JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                         NOTICE OF MOTION AND MOTION TO DISMISS

                                                           CV-09-02625 R (RCX)

1    gambling business."[7]  (Compl. ¶¶ 7, 18, 30, 39, 60, 66-67, 69.)  The Complaint

2    alleges that "Defendants each knew, or is deemed to have known" that they were

3    causing the Trust to purchase publicly-traded stock of Internet gaming businesses,

4    including PartyGaming Plc and NETeller Plc, which allegedly were taking bets

5    from individuals in the United States.  (Compl. ¶¶ 60, 69, 73.)  According to

6    Plaintiff, the Trustees ignored a number of "red flags" in the media concerning the

7    legality of investments in such companies.  (Compl. ¶ 99.)

8         The market value of these shares declined after the government commenced

9    a "crackdown" on Internet gaming in the summer of 2006.  (Compl. ¶ 1.)  Plaintiff

10   alleges that, through these open market securities purchases alone, Defendants

11   violated and conspired to violate RICO, and committed three torts under state law:

12   breach of fiduciary duty, negligence, and waste.  (Compl. ¶¶ 8-9, 30, 38, 72, 76,

13   119-130.)  Except for Plaintiff's waste claim, which is brought only derivatively,

14   each claim is asserted derivatively and, in the alternative, as individual and putative

15   class claims.  (Compl. ¶¶ 13-14, 107-47.)

16        Plaintiff claims that he was injured by the decline in value of the shares in

17   gaming businesses because "[e]ach dollar lost . . . resulted in a dollar loss to the

18   Fund portfolio and to the investors in the Fund on a *pro rata* basis."  (Compl. ¶ 4.)

19   In other words, Plaintiff was harmed only insofar as the Fund was harmed.

20   Notably, Plaintiff does not allege any overall decrease in the value of his shares.

21        The Complaint lacks any particularized facts about the Board of Trustees'

22   knowledge or actions with respect to the securities purchases at issue.  The

23   Complaint does not reference a single Board-level communication, Board decision,

24   or Board-approved procedure.  The Complaint makes no specific allegations

25   concerning any actions taken by Mr. Gavin or Mr. Sussman in connection with the

26   investments at issue.  Instead, Plaintiff makes the conclusory allegation that the

27

28   ---

[7] There is no allegation that the Global Fund or Emerging Markets Fund held shares
in Internet gaming businesses.  (Compl. ¶ 18.)

1  trustees "allowed the Trust to invest or continue its investments in illegal gambling
2  businesses through the Fund portfolio." (Compl. ¶ 30.)

3  ### C.   Failure To Make Pre-Suit Demand

4      Plaintiff *admits* that he made *no demand* upon the Trustees before bringing
5  suit, as required by the Delaware demand requirement. (Compl. ¶ 89.) The
6  Complaint alleges that demand would have been futile because the Trustees face an
7  inherent conflict of interest, and a majority of the Trustees "could not have properly
8  exercised his independent and disinterested business judgment in responding to a
9  demand" because they face a substantial threat of liability (Compl. ¶¶ 89, 101.)
10 The Complaint also alleges in conclusory terms that demand is excused because the
11 alleged wrongdoing "constitutes inherently illegal criminal activity that is *ultra*
12 *vires* and a *per se* violation of the business judgment rule." (Compl. ¶ 102.)

13 ## III.   ARGUMENT

14 ### A.   The Complaint Must Be Dismissed Because Any Alleged Injury Is Derivative, And Plaintiff Failed To Plead Demand Futility

15
16     Plaintiff sues derivatively on behalf of the Trust, but asserts individual and
17 putative class claims in the alternative for each cause of action except waste.
18 (Compl. ¶¶ 13-14, 107-47.) Despite Plaintiff's attempt to assert direct claims, all of
19 the claims are derivative and should be dismissed for failure to plead demand
20 futility.

21
22 #### 1.   Any Alleged Harm Is Derivative Of Harm To The Trust

23     Because the Trust is formed under the laws of the state of Delaware (Compl.
24 ¶ 15), Delaware law governs the question of whether a claim against the Trust is
25 derivative, and therefore subject to the demand requirement. *Kamen v. Kemper*
26 *Fin. Servs., Inc.*, 500 U.S. 90, 98, 111 S. Ct. 1711, 1717, 114 L. Ed. 2d 152,
27 (1991).[8] Under Delaware law, whether a claim is derivative depends "*solely* on the
28 ─────────────────
   [8] *See also* RJN Ex. 4 (Decl. of Trust, § 9.6) ("The Trust and this Declaration of

8002949                                    - 7 -          JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                          NOTICE OF MOTION AND MOTION TO DISMISS

CV-09-02625 R (RCX)

Case 2:09-cv-02625-R-RC     Document 37     Filed 06/26/2009     Page 15 of 32

1   following questions: (1) who suffered the alleged harm (the corporation or the suing

2   stockholders, individually); and (2) who would receive the benefit of any recovery

3   or other remedy (the corporation or the stockholders, individually)?" *Tooley v.*

4   *Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (emphasis in

5   original).  In order to state a direct claim, the alleged injury must be "independent

6   of any alleged injury to the corporation," and the shareholder "must demonstrate

7   that the duty breached was owed to the stockholder and that he or she can prevail

8   without showing an injury to the corporation." *Id.* at 1039.

9       Here, any alleged harm to Plaintiff due to his status as a shareholder in the

10   Fund is derivative of the alleged harm to the Fund or the Trust.  Plaintiff alleges

11   that the loss in the Fund's investments in Internet gaming businesses resulted in a

12   decline in value of the Fund and, in turn, a diminution in the value of shareholders'

13   proportionate shares in the Fund.  (Compl. ¶ 4 ("Each dollar lost by Defendants'

14   investments in illegal gambling businesses resulted in a dollar loss to the Fund

15   portfolio and to the investors in the Fund on a *pro rata* basis.").)  In other words,

16   Plaintiff concedes that shareholders were harmed only by virtue of and in

17   proportion to their *pro rata* ownership of shares.  Indeed, in seeking to represent a

18   class of investors in the Fund, Plaintiff claims that "all members of the [putative]

19   Class were injured . . . in exactly the same way." (Compl. ¶¶ 103, 105(c).)

20       Courts applying Delaware law uniformly reach this conclusion where, as

21   here, the injury alleged is a diminution of value of shares held by plaintiffs:

22   "Delaware courts have long recognized that actions charging 'mismanagement

23   which depress[] the value of stock [allege] a wrong to the corporation; *i.e.*, the

24   stockholders collectively, to be enforced by a derivative action.'" *Kramer v. W.*

25   *Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) (quoting *Bokat v. Getty Oil Co.*,

26

27   Trust, and the rights, obligations and remedies of the Trustees and Shareholders
hereunder, are to be governed by and construed and administered according to the

28   Delaware Act and the other laws of the State of Delaware.").

- 8 -

1   262 A.2d 246, 249 (Del. 1970)). *See also Tooley,* 845 A.2d at 1037.

2        This principle applies equally in the mutual fund context. *See, e.g., In re*

3   *Lord Abbett Mutual Funds Fee Litig.*, 407 F. Supp. 2d. 616, 626 (D.N.J. 2005)

4   (claims for "diminished marginal returns" are derivative); *Hogan v. Baker,* No.

5   Civ.A. 305CV0073P, 2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005) (holding

6   that claim was derivative under Delaware law where mutual fund shareholders were

7   injured "indirectly as a result of their investment"). "A claim that the assets of a

8   mutual fund have been depleted through mismanagement or other wrongdoing is

9   one that should be brought derivatively." *In re American Mut. Funds Fee Litig.*,

10  No. CV 04-5593-GAFRNBX, 2005 WL 3989803, at *4 (C.D. Cal. Dec. 16, 2005)

11  (citing *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir. 1970).[9]

12        **2.    Plaintiff's Attempt To Transform His Derivatice- Claims**

13               **Into Direct Claims Fails**

14        Plaintiff makes three meritless arguments in an attempt to plead direct injury:

15        *First,* courts have rejected Plaintiff's argument that shareholders are directly

16  injured by the diminution of the value of stock in the mutual fund context because

17  "the value of shares in the Fund is calculated daily on the basis of the net asset

18  value of the Fund's portfolio." (Compl. ¶ 4.)  For example, in *Hogan v. Baker,*

19  mutual fund investors sued the advisers and trustees of seventy Delaware mutual

20  funds, and claimed direct injury on the ground that "mutual funds are unlike

21  conventional corporations in that any increase or decrease in fund assets is

22  *immediately* passed on *directly to the fund investors.*"  No. Civ.A. 305CV0073P,

23  2005 WL 1949476, at *4 (N.D. Tex. Aug. 12, 2005) (emphasis in original).  The

---

[9] *See also Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (mutual fund shareholders' claim was derivative where the only injury to plaintiff was "the indirect harm which consists of the diminution in the value of his or her shares"); *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1027-28 (C.D. Cal. 2005) (same).  While the courts in *Lapidus* and *Mutchka* were applying Massachusetts law, the test for determining whether a claim is direct or derivative is the same under Delaware and Massachusetts law. *Compare Tooley*, 845 A.2d at 1033, *with, Sarin v. Ochsner*, 48 Mass. App. Ct. 421, 721 N.E.2d 932, 934 (Mass. App. Ct. 2000).

1   court found this distinction unpersuasive because "if the only injury to an investor

2   is the indirect harm which consists of the diminution in the value of his or her

3   shares, the suit must be derivative." *Id.  See also Kauffman v. Dreyfus Fund, Inc.*,

4   434 F.2d 727, 733 (3d Cir. 1970) (rejecting argument that "[s]ince the redemptive

5   value of a mutual fund share bears a direct relationship to the total net assets owned

6   by the fund, the redemptive value is always directly affected by the net value of the

7   total assets"); *Mutchka*, 373 F. Supp. 2d at 1027-28 (rejecting argument that claims

8   were direct because "any increase or decrease in [mutual] fund assets is

9   immediately passed on or allocated to the fund investors . . .").[10]

10       *Second*, Plaintiff claims that he "seeks special injuries not belonging to the

11   Trust," namely "the recoupment of fees, commissions and other compensation" that

12   he and each putative Class member paid to Defendants "that are separate and

13   distinct from those paid by the other shareholders of the Trust." (Compl. ¶ 142.)

14   This conclusory allegation does nothing to circumvent *Tooley*, which expressly

15   "disapprove[d] the use of the concept of 'special injury' as a tool" in the analysis

16   between direct and derivative actions. *Tooley*, 845 A.2d at 1035.  Moreover,

17   Plaintiff makes no allegation concerning any fees or other compensation paid to Mr.

18   Gavin or Mr. Sussman that allegedly caused him special injury.

19       Even if Plaintiff could establish that some fees or other compensation were

20   paid to Mr. Gavin or Mr. Sussman, courts applying Delaware law have rejected

21   attempts to circumvent *Tooley* based on direct payment of mutual fund fees.  For

22

23   [10] The plaintiffs in *Mutchka* and other mutual fund cases have relied unsuccessfully

24   upon *Strigliabotti v. Franklin Resources, Inc.*, No. C 04-00883 SI, 2005 WL
     645529 (N.D. Cal. Mar. 7, 2005).  There, the plaintiffs argued that their state law

25   claims were based on direct injuries resulting from excessive fees "because of the
     unique nature and structure of mutual funds," and the court agreed. *Id.* at *7-8

26   (finding that "the financial harm from overcharges is harm to the individual
     investors, who own the Funds' assets and bear its expenses directly on a pro rata

27   basis").  However, *Strigliabotti* was applying California law, and courts have found
     its holding to be inconsistent with Delaware law, which governs this case. *See*

28   *Hogan*, 2005 WL 1949476, at *4; *In re Goldman Sachs Mutual Funds Fee Litig.*,
     No. 04 Civ. 2567 (NRB), 2006 WL 126772, at *6 (S.D.N.Y. Jan 17, 2006).

                                           JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                           NOTICE OF MOTION AND MOTION TO DISMISS

                                           CV-09-02625 R (RCX)

1  example, in *In re Evergreen Mutual Funds Fee Litigation*, plaintiffs asserted direct

2  claims against mutual funds by alleging that "distribution and management fees . . .

3  were borne directly by the shareholders, and that therefore the shareholders suffered

4  an injury independent of the corporation."  423 F. Supp. 2d 249, 261 (S.D.N.Y.

5  2006).  The court dismissed the claims as derivative on the ground that the "alleged

6  financial harm" of paying improper fees does not "harm[] the individual investor

7  independently of the harm to the [mutual funds]."  Instead, "a pro rata bearing of

8  expenses by individual shareholders seems to fall within the very essence of an

9  injury which is not independent from that suffered by the corporation."  *In re*

10  *Goldman Sachs Mutual Funds Fee Litig.*, No. 04 Civ. 2567 (NRB), 2006 WL

11  126772, at *6 (S.D.N.Y. Jan. 17, 2006) (shareholders' alleged injury of excess fees,

12  which were "actually incurred by the Funds," "occurred only secondarily and 'as a

13  function of and in proportion to [their] pro rata investment' in the Funds").

14      *Third,* Plaintiff's attempt to plead a direct claim by alleging that the

15  Defendants breached duties owed directly to the Trust's shareholders is unavailing.

16  (Compl. ¶¶ 139-40, 145.)  *See Evergreen*, 423 F. Supp. 2d at 261; *Hogan*, 2005 WL

17  1949476, at *5.  Plaintiff "must demonstrate that the duty breached was owed to the

18  stockholder[s] *and that he or she can prevail without showing an injury to the*

19  *corporation.*"  *Tooley*, 845 A.2d at 1039 (emphasis added).  As explained above,

20  Plaintiff cannot prevail without showing injury to the Fund or Trust.

21                    **3.      Plaintiff Admits That He Failed To Make A Demand, And**

22                    **He Has Failed To Plead Demand Futility**

23      Federal Rule of Civil Procedure 23.1 requires a shareholder seeking to

24  vindicate the interests of a corporation through a derivative suit to allege

25  *particularized facts* establishing that a demand was made or should be excused as

26  futile.  *In re Silicon Graphics Inc. Securities Litig.*, 183 F.3d 970, 989-90 (9th Cir.

27  1999).  The standard for excusing demand is governed by the law of a mutual

28

- 11 -

JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
NOTICE OF MOTION AND MOTION TO DISMISS

CV-09-02625 R (RCX)

Case 2:09-cv-02625-R-RC     Document 37     Filed 06/26/2009     Page 19 of 32

1   fund's state of incorporation: here, Delaware. *Id.* at 990; *In re American Mut.*

2   *Funds Fee Litig.*, 2005 WL 3989803, at *5.

3        The demand requirement is no mere procedural nicety.  It reflects and

4   enforces a "cardinal precept" of corporate governance: that it is the directors of a

5   corporation (or the trustees of a trust) who are empowered to decide the affairs of

6   that company.  *See Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); Del. Code

7   Ann. tit. 12, § 3816(a).  Because "[b]y its very nature the derivative action impinges

8   upon the managerial freedom of directors," strict demand requirements are

9   imposed.  *Id.* at 811.  Under Delaware law, when derivative plaintiffs are

10   challenging an affirmative business decision made by the board, demand must be

11   excused under the *Aronson* test.  *Aronson*, 473 A.2d at 814.  But "where the subject

12   of a derivative suit is not a business decision of the Board but rather a violation of

13   the Board's oversight duties," demand may be excused under *Rales v. Blasband*,

14   634 A.2d 927, 934 (Del. 1993).  The *Rales* test applies here, because the Complaint

15   does not set forth allegations concerning any specific board decision or action.

16        Under *Rales*, a court may not excuse demand unless Plaintiff pleads, *with*

17   *particularity*, factual allegations sufficient to "create a reasonable doubt that, as of

18   the time the complaint is filed, the board of directors could have properly exercised

19   its independent and disinterested business judgment in responding to a demand."

20   *Rales*, 634 A.2d at 934.  The Complaint fails to plead facts creating a "reasonable

21   doubt" as to the Board's independence and disinterest due to the statutory

22   presumption of independence supplied by the law governing statutory trusts.

23        The Delaware Statutory Trusts Act provides that an "[i]ndependent trustee"

24   who is "not an interested person" as defined in the Investment Company Act of

25   1940 ("ICA"), 15 U.S.C. §§ 80a *et seq.* (2000), is "deemed to be independent and

26   disinterested *for all purposes.*"  Del. Code Ann. tit. 12, § 3801(d) (emphasis added).

27   Under the ICA, a trustee is an "interested person" *only* if the trustee is an "affiliated

28   person," meaning the trustee is "controlled by" the investment adviser.  15 U.S.C.

- 12 -

Case 2:09-cv-02625-R-RC      Document 37      Filed 06/26/2009      Page 20 of 32

1    § 80a-2(a)(3), (19).[11]  Courts applying Delaware law have held that § 3801 supplies

2    "[t]he answer to . . . whether there is reasonable doubt" as to a trustee's

3    "independence and disinterest[]," meaning that a trustee is "'deemed to be

4    independent and disinterested for all purposes'" – including demand futility – if he

5    or she is not an "interested person" under the ICA.  *Boyce v. AIM Management*

6    *Group, Inc.*, Civ. No. H-04-2587, 2006 WL 4671324 at *4-5 (S.D. Tex. Sept. 29,

7    2006).  *See also Goldman Sachs Mutual Funds Fee Litig.*, No. 04 Civ. 2567 (NRB),

8    2006 WL 126772, at *11 (S.D.N.Y. Jan. 16, 2006).  "There can be no question that

9    the statute[] appl[ies] in the demand futility context."  *In re Mut. Funds Inv. Litig.*,

10   384 F. Supp. 2d at 879.[12]

11        Plaintiff fails to plead particularized facts showing that a majority of the

12   Trustees are interested persons.  Indeed, Plaintiff cannot plead such facts because

13   four of the five trustees, including Mr. Gavin and Mr. Sussman, are independent

14   trustees under the ICA.  (RJN, Ex. 3 at 30-31 (SAI); RJN, Ex. 2 at 22, 24 n.5 (2008

15   Annual Report).)  The Complaint sets forth no facts showing an affiliation, as

16   defined under the ICA, between Mr. Gavin and Mr. Sussman, on the one hand, and

17   CCM on the other.  Because the Complaint sets forth no allegations demonstrating

18   that a majority of the Trustees are "interested persons," the allegations do not create

19   a reasonable doubt as to their presumed independence and disinterest.

20        Plaintiff attempts to establish demand futility based on two general

21   allegations:  (1) that the Board of Trustees is inherently conflicted due to duties

22   owed to shareholders of the various funds; and (2) that a majority of the Trustees

23

24   [11] Similarly, the Declaration of Trust provides that "[a] Trustee who is not an
     interested person of the Trust shall be deemed to be independent and disinterested
25   under the Delaware Act and other applicable Delaware law when making any
     determinations or taking any action as a Trustee."  RJN, Ex. 4 (Decl. of Trust,
26   § 4.7).

27   [12] *See also In re Eaton Vance Mutual Funds Fee Litig.*, 380 F. Supp. 2d 222, 239
     (S.D.N.Y. 2005) (applying similar Massachusetts statute, Mass. Gen. Laws ch. 182,
28   § 2B, to determine if demand was excused in derivative case brought on behalf of
     mutual funds).

8002949                          - 13 -          JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                 NOTICE OF MOTION AND MOTION TO DISMISS

                                                          CV-09-02625 R (RCX)

1  face a substantial risk of liability.  Neither has merit.

2          **a.**      **Demand Is Not Excused Due To Purported Conflicts**
3                      **With Other Funds**

4        Plaintiff's allegation that the entire Board of Trustees is "inherently

5  conflicted" due to purported conflicts between shareholders of the various funds in

6  the Trust is confusing, at best, and unavailing.  (Compl. ¶ 89.)  Plaintiff alleges that

7  any decision to vindicate the rights of the Fund's investors against CCM would be

8  contrary to the interests of shareholders of the two other funds (*i.e.,* the Emerging

9  Markets Fund and the Global Fund) as a result of purported subsidies to the other

10  funds for fees paid to CCM.  (Compl. ¶¶ 89-90, 93.)  Plaintiff alleges that the

11  subsidy will cease to exist if he prevails in this action, and that the other funds will

12  have to pay to CCM the amounts of the previously subsidized fees.  (Compl. ¶ 93.)

13        Plaintiff sets forth no facts (other than a conclusory allegation that need not

14  be assumed true) that the repayment of the alleged subsidies would be required in

15  the event he succeeds in this litigation.[13]  Even assuming that the allegation of this

16  speculative repayment scenario is true, Plaintiff's vague allegations of an inherent

17  conflict are not sufficiently particular to create a reasonable doubt that a majority of

18   

---

[13] Although not necessary for purposes of resolving this motion, there is in fact no "subsidy." Each fund has a separate investment advisory agreement with CCM. The Fund pays CCM a management fee of 0.80 percent annually (80 basis points) to CCM. The other Funds have similar arrangements with CCM, but the amount of fees paid by these Funds is quite small relative to the Fund's fee, and CCM has waived certain of the fees of the Emerging markets Fund and Global Value Fund pursuant to short-term (typically one-year) contracts entered into voluntarily with each of these Funds. (*See* RJN, Ex. 3 at 33-34 (SAI).) This is an entirely legitimate practice. How CCM chooses to spend bona fide profits it receives from one contract (such as organizing new funds) and whether it chooses to waive fees to which it is entitled under other contracts, poses no conflict for the Trustees.

The Complaint also alleges that "of the total fees the Trust pays to CCM for managing all three funds that compose the Trust, 98% is allocated to the Fund." Compl. ¶ 93. This is not accurate. Fees are in fact calculated and paid separately by each Fund pursuant to separate advisory contracts. They are not calculated in aggregate and then "allocated" to the Funds. (*See* RJN, Ex. 3 at 33-34 (SAI).) The advisory contracts, along with the SAI, are publicly filed with the SEC and are available on the SEC's website. The Fund is far larger than the other two series; accordingly, it pays a far larger management fee. *Id.*

- 14 -

1    the Trustees, including four outside, non-management trustees, could their exercise

2    independent and disinterested business judgment in responding to a demand

3    concerning the unrelated investments by the Fund. *See Rales*, 634 A.2d at 934.

4    Indeed, "membership on the boards of several funds within a mutual fund complex

5    is the prevailing practice in the industry," and "a director of a fund who is also a

6    director of another fund managed by the same adviser generally would not be

7    viewed as an interested person of the fund under [the ICA] solely as a result of this

8    relationship." *Krantz v. Prudential Investments Fund Management LLC*, 305 F.3d

9    140, 143-44 (3d Cir. 2002) (quoting *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248

10   F.3d 321, 330 (4th Cir. 2001)). Here, the fact that the Trust has three Fund

11   portfolios does not disable a majority of the Trustees from deciding whether to

12   bring a derivative claim on behalf of the Trust for the investments at issue.

13
14
        **b.**    **Plaintiff's Conclusory Allegation That The Trustees Face A Threat Of Liability Does Not Excuse Demand**

15        Plaintiff's allegation that the Trustees "face a substantial likelihood of

16   criminal and civil liability" also fails to plead a disabling interest. (Compl. ¶ 89.)

17   The Delaware Supreme Court has held that "the mere threat of personal liability for

18   approving a questioned transaction, standing alone, is insufficient to challenge

19   either the independence or disinterestedness of directors." *Aronson*, 473 A.2d at

20   815; *see Spiegel v. Buntrock*, 571 A.2d 767, 774 (Del. 1990). Indeed, "accepting

21   such grounds would 'effectively abrogate Rule 23.1' as it would apply in virtually

22   every case." *Evergreen*, 423 F. Supp. 2d at 263 (quoting *Aronson*, 473 A.2d at 818).

23        Here, the Complaint fails to establish that the Trustees face a substantial

24   likelihood of liability because, as discussed in detail below, the Fund's Declaration

25   of Trust and Delaware law provide the Trustees with substantial protection against

26   claims of the sort asserted here. *See* RJN, Ex. 4 (Decl. of Trust § 8.1). "Where

27   directors are contractually or otherwise exculpated from liability for certain

28

                   - 15 -        JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                        NOTICE OF MOTION AND MOTION TO DISMISS

                                              CV-09-02625 R (RCX)

1   conduct, then a serious threat of liability may only be found to exist if the plaintiff

2   pleads a *non-exculpated* claim against the directors based on particularized facts."

3   *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (emphasis in original); *In re*

4   *Citigroup Inc. Shareholder Derivative Litig.*, 964 A.2d 106, 124-25 (Del. Ch. 2009)

5   (same); *In re Baxter Int'l., Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch.

6   1995) (same).  Because Plaintiff fails to plead an actionable claim against the

7   Trustees under the exculpatory provision or Delaware law, *see infra.* Sections III.B-

8   C, Plaintiff cannot rely on the Complaint to overcome the Trustees' independence

9   and disinterestedness.

10         Indeed, Plaintiff alleges nothing more than conclusory allegations, which are

11   not entitled to the assumption of truth and do not provide sufficient particularity to

12   establish a substantial likelihood of liability.  *See Ashcroft v. Iqbal*, 129 S.Ct. 1937,

13   1949, 1950 (2009); *accord Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127

14   S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007).  Among other things, Plaintiff makes

15   the conclusory assertions that the Trustees "allowed" the Trust to purchase stock in

16   purportedly "illegal gambling businesses" and that they "knew or were reckless in

17   not knowing that the Trust's investments in such companies were illegal." (Compl.

18   ¶ 30.).  However, the Complaint sets forth no well-pleaded allegations that the

19   Board of Trustees was aware of or approved the investments.  Nor are there any

20   particularized facts establishing that the Trustees knew or could have foreseen that

21   such businesses would be deemed illegal in the United States.

22         Plaintiff attempts to establish a substantial risk of liability by pointing to

23   news articles and other public materials concerning government enforcement and

24   legislative actions against Internet gaming.  (Compl. ¶¶ 41-46, 65.)  However,

25   courts have held that publicity of industry-wide problems do not provide sufficient

26   particularity to show that trustees were aware of any alleged wrongdoing by the

27   mutual fund in question.  For example, in *In re Mutual Funds Investment Litigation*,

28   shareholders of Delaware mutual funds alleged that the trustees violated their

1   fiduciary duties by approving advisory contracts "without detecting and preventing

2   late trading and market timing activities." 384 F. Supp. 2d 873, 879 (D. Md. 2005).

3   The shareholders alleged that "because late trading and market timing were

4   endemic in the mutual fund industry and because of the 'copious coverage' of the

5   problem in books and articles, the trustees were on notice that the activities might

6   be occurring in the Janus funds." *Id.* In determining whether there was a

7   substantial risk of liability, the court found that there were no allegations that the

8   trustees knew that late trading and market timing activities were taking place within

9   the specific funds in question, and therefore, "at most any failure to [detect such

10   activities] constituted negligence, not the intentional conduct, recklessness, or, at

11   the least, gross negligence required to hold them liable for their inactions." *Id.* at

12   879-80 (citations omitted) (emphasis added). Similarly, here, even assuming that

13   the Trustees were aware of the publicity concerning the government's enforcement

14   actions against Internet gaming businesses, there are no allegations that the Trustees

15   knew of any alleged wrongdoing by the Fund. *See, e.g., In re Silicon,* 183 F.3d at

16   990 (general allegations that the board engaged in a fraudulent scheme to inflate the

17   value of stock, and approved alleged insider trading, did not show substantial threat

18   of liability under Delaware law); *Seminaris v. Landa,* 662 A.2d 1350, 1354-55

19   (Del. Ch. 1995) (holding that general allegation that the directors "looked the other

20   way" when the board's chairman engaged in misconduct did not show "substantial

21   likelihood of liability"). Accordingly, Plaintiff has failed to plead with particularity

22   that a majority of the Trustees face a substantial likelihood of liability.

23         **c.**    **Plaintiff Does Not Allege Any Other Valid Basis To**

24               **Excuse Demand**

25        Plaintiff alleges several other purported bases for excusing demand, all of

26   which lack merit.

27        *First,* Plaintiff alleges a variation on the claim that the Trustees face a

28

8002949

JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
NOTICE OF MOTION AND MOTION TO DISMISS

CV-09-02625 R (RCX)

Case 2:09-cv-02625-R-RC      Document 37      Filed 06/26/2009      Page 25 of 32

1    substantial risk of liability – that granting the demand would require the Trustees to

2    sue themselves. (Compl. ¶¶ 95, 100.)  The mere allegation that the trustees would

3    be required to sue themselves is insufficient to excuse demand absent particularized

4    allegations establishing that they face a substantial likelihood of liability.  As the

5    Delaware Supreme Court has held, the "bootstrap argument" that "directors could

6    not be expected to sue themselves . . . raises no legally cognizable issue under

7    Delaware corporate law." *Aronson*, 473 A.2d at 818. *See also In re American Mut.*

8    *Funds Fee Litig.*, 2005 WL 3989803, at *5 ("[T]he fact that directors would have to

9    sue themselves and their friends and colleagues does not excuse demand.");

10   *Goldman Sachs*, 2006 WL 126772, at *11.

11       *Second*, Plaintiff's assertion that demand is excused because the Trustees

12   would have to sue CCM, which selects the trustees, has consistently been rejected

13   by Delaware courts. (Compl. ¶¶ 98, 100.) "It is the care, attention and sense of

14   individual responsibility to the performance of one's duties, *not the method of*

15   *election*, that generally touches on independence." *Aronson*, 473 A.2d at 816

16   (emphasis added); *accord Andreae v. Andreae*, Civ. A. No. 11905, 1992 WL

17   43924, at *5 (Del. Ch. Mar. 5, 1992).

18       *Third*, the conclusory allegation that demand is excused because the alleged

19   wrongdoing constitutes "inherently illegal criminal activity that is *ultra vires* and a

20   *per se* violation of the business judgment rule" is not entitled to be assumed true.

21   *See Iqbal*, 129 S. Ct. at 1949-50.  (Compl. ¶¶ 89, 98, 100-02.)  Moreover,

22   "[a]llegations of illegal or *ultra vires* actions do not automatically excuse a plaintiff

23   from demand." *In re infoUSA Shareholders Litig.*, 953 A.2d 963, 988 (Del. Ch.

24   2007).  Here, the Complaint does not allege any specific action or decision, let

25   alone any *ultra vires* activity, pursued by the Trustees.[14]

---

26   [14] Although *Rales* is the correct test, the Complaint also fails to plead demand
     futility under the *Aronson* test.  Under *Aronson*, a plaintiff must allege
27   "particularized facts" creating a "reasonable doubt" that "(1) the directors are
     disinterested and independent and (2) the challenged transaction was otherwise the
28   product of a valid exercise of business judgment." *Aronson*, 473 A.2d at 814.

                                                   JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                   NOTICE OF MOTION AND MOTION TO DISMISS

                                                             CV-09-02625 R (RCX)

1    For these reasons, Plaintiff has failed to plead demand futility, and the

2    Complaint should be dismissed.

3    **B.    The Complaint Fails To State An Actionable Claim Against Mr.**

4    **Gavin And Mr. Sussman Under The Declaration Of Trust**

5    Even if the Court finds that demand would have been futile (which it should

6    not), the Complaint fails to state an actionable claim against Mr. Gavin or Mr.

7    Sussman under the Declaration of Trust.  Section 8.1 of the Declaration of Trust

8    provides: "A Trustee . . . shall not be personally liable to any person for any act,

9    omission, or obligation of the Trust or any Trustee" except "by reason of willful

10   misfeasance, bad faith, gross negligence, or reckless disregard of the duties

11   involved in the conduct of the office of Trustee hereunder."  (RJN, Ex. 4 (Decl. of

12   Trust, § 8.1).)[15]  *See also* 12 Del. Code §§ 3803, 3806(c).  The Delaware Supreme

13   Court has held that shareholder complaints asserting a breach of the duty of care

14   must be dismissed where barred by exculpatory provisions.  *Emerald Partners v.*

15   *Berlin*, 787 A.2d 85, 91 (Del. 2001); *Malpiede*, 780 A.2d at 1093 (holding that

16   exculpatory provisions can be raised on a motion to dismiss).  Where an

17   exculpatory provision would preclude recovery, permitting an action to continue

18   serves "no useful purpose."  *Emerald Partners*, 787 A.2d at 92.  Federal courts

19   applying Delaware law have dismissed claims barred by exculpatory provisions

20   raised in a Rule 12(b)(6) motion.  *See, e.g., In re Verestar, Inc.*, 343 B.R. 444, 471-

21   75 (Bankr. S.D.N.Y. 2006); *In re Sagent Technology, Inc.*, 278 F. Supp. 2d 1079,

22   _____

23   Plaintiff fails to meet this standard.  Here, the Complaint fails to allege
     particularized facts creating a reasonable doubt that the Trustees are disinterested

24   and independent for the same reasons that it fails the *Rales* test.  Further, as
     explained below, Plaintiff fails to allege any reason to doubt the investments at

25   issue were a valid exercise of business judgment within the Trustees' discretion.
     *See infra* Sections B-C.

26   [15] As explained in detail in the Request for Judicial Notice, the Court is entitled to
     take judicial notice of the Declaration of Trust, which was filed publicly with the

27   SEC and the Delaware Secretary of State.  *See* RJN at 2-6; *Metzler Inv. GMBH v.*
     *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 n.7 (9th Cir. 2008); *Malpiede v.*

28   *Townson*, 780 A.2d 1075, 1093 (Del. 2001).

8002949                                              - 19-        JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                                 NOTICE OF MOTION AND MOTION TO DISMISS

1   1095 (N.D. Cal. 2003).

2   Plaintiff has not come close to pleading a non-exculpated claim against Mr.

3   Gavin or Mr. Sussman. The Complaint does not contain any allegations of specific

4   actions or omissions by Mr. Gavin or Mr. Sussman, much less with the degree of

5   culpability required. Although Plaintiff makes the conclusory allegation that the

6   trustees "allowed" the Trust to purchase publicly traded stock in purportedly

7   "illegal gambling businesses" (Compl. ¶ 30.), the Complaint sets forth no

8   allegations concerning what involvement Mr. Gavin or Mr. Sussman – as outside,

9   non-management trustees – had in the securities purchases at issue. There is no

10  allegation that either of them approved the Fund's investments in Internet gaming

11  businesses, let alone had reason to foresee that the government would deem Internet

12  gaming as "illegal" in the United States.

13  In an attempt to plead a non-exculpated claim, Plaintiff makes the boilerplate

14  allegation that "[t]he defendant trustees . . . face a substantial likelihood of criminal

15  and civil liability for wrongs that constitutes, among other things, crimes, bad faith,

16  gross negligence, willful misfeasance, reckless disregard of duty, and violation of

17  Defendants' duty of loyalty." (Compl. ¶ 89(b).) This conclusory assertion,

18  however, need not be assumed as true. *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare

19  recitals of the elements of a cause of action, supported by mere conclusory

20  statements, do not suffice.") (quoting *Twombly*, 550 U.S. at 555).

21  Plaintiff also relies on the approach of alleging that the trustees ignored

22  "widely publicized red flags" concerning the legality of investments in Internet

23  gaming companies such as PartyGaming and NETeller. (Compl. ¶ 99.) General

24  allegations of publicity concerning Internet gaming, however, are not sufficient to

25  overcome the exculpatory provision. For example, in *Wood v. Baum*, the plaintiff

26  brought a derivative action against directors of a Delaware limited liability

27  company, alleging breach of fiduciary duty and failure of oversight regarding

28  accounting and reporting controls. 953 A.2d 136, 138, 142 (Del. 2008). The

8002949                                    - 20 -        JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                         NOTICE OF MOTION AND MOTION TO DISMISS

1   Operating Agreement included an exculpatory provision, which exempted directors

2   from any liability "except in the case of fraudulent or illegal conduct of such

3   person." *Id.* at 139 & n.1. The plaintiff did not plead specific conduct by the

4   directors or that the defendants knew of the alleged improprieties, but nevertheless

5   claimed that the board of directors knowingly ignored certain "red flags." *Id.* at

6   143. Noting that, "[u]nder Delaware law, red flags 'are only useful when they are

7   either waved in one's face or displayed so that they are visible to the careful

8   observer, the Court found that there were no red flags from which it could be

9   inferred that the defendants were aware of or "otherwise consciously and in bad

10  faith" ignored the alleged wrongdoing. *Id. See also In re Mutual Funds Investment*

11  *Litigation,* 384 F. Supp. 2d at 879 (rejecting argument that trustees were on notice

12  that unlawful activities were occurring in the funds "because late trading and

13  market timing were endemic in the mutual fund industry and because of the

14  'copious coverage' of the problem in books and articles"); *In re Citigroup Inc.*

15  *Shareholder Derivative Litig.*, 964 A.2d 106, 128 (Del. Ch. 2009) ("red flags"

16  amounting to "little more than portions of public documents that reflected the

17  worsening conditions in the subprime mortgage market and in the economy

18  generally" were insufficient to show that directors were or should have been aware

19  of wrongdoing at the Company).

20          Similarly, here, the Complaint does not plead any facts suggesting that

21  specific red flags evidencing wrongdoing by the Trust were waved at Mr. Gavin or

22  Mr. Sussman. Although Plaintiff describes articles and cases concerning the

23  Internet gaming industry (Compl. ¶¶ 41-46, 65), the allegations do not establish that

24  Mr. Gavin or Mr. Sussman had reason to foresee that the government authorities

25  would commence a crackdown on Internet gaming companies that take bets from

26  individuals in the United States. To be sure, any failure by Mr. Gavin or Mr.

27  Sussman to foresee any government action did not constitute "willful misfeasance,

28  bad faith, gross negligence, or reckless disregard" of their duties, as required by the

1    exculpatory provision.  (RJN, Ex. 4 (Decl. of Trust, § 8.1).)[16]  Thus, the Complaint

2    does not set forth facts giving rise to non-exculpated claims against Mr. Gavin or

3    Mr. Sussman, and all claims against them should be dismissed.

C.    **The Complaint Fails to State A Cognizable Claim Under Federal Or State Law**

1.    **Plaintiff Fails To State Actionable Conduct Under RICO**

Plaintiff's RICO claims (Counts I through II and VI through VII) fail on

several grounds.  First, the Ninth Circuit has made clear that, where, as here, a

shareholder asserts claims that actually belong to the corporation, the shareholder

lacks standing to sue under RICO.  *See Sparling v. Hoffman Constr. Co., Inc.*, 864

F.2d 635, 640 (9th Cir. 1988); *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1419-

20 (9th Cir. 1995).[17]  Second, Plaintiff's RICO claims fail because he cannot show

that he was injured "by reason of" the alleged purchases of shares in Internet

gaming businesses.  *See Holmes v. Securities Investor Protection Corp.*, 503 U.S.

---

[16] For these reasons, this case is distinguishable from cases such as *In re Abbott Labs. Derivative Shareholders Litig.*, 325 F.3d 795 (7th Cir. 2003), and *McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001), on which Plaintiff is expected to rely.  In *Abbott*, plaintiffs alleged that the board "knew of the violations of law" by company managers directly overseen by the board, on the basis of "an extensive paper trail," including FDA warning letters, SEC disclosure forms, and a Wall Street Journal article "about Abbott's FDA problems."  *Id.* at 800, 806, 808-09.  Similarly, in *McCall*, plaintiffs alleged that the board knew of illegal Medicare and Medicaid practices from audit information containing "unmistakable signs" of illegality, as well as a qui tam action against the company and a New York Times article about an investigation of the company's illegal practices.  239 F.3d at 820, 822-23.  Moreover, the directors in both *Abbott* and *McCall* were charged with direct oversight of the officers who allegedly violated the law, and the directors were specifically alleged to have had actual knowledge of the alleged violations.  *Abbott*, 325 F.3d at 801-02; *McCall*, 239 F.3d at 814, 819-20.  There are no such allegations here.

[17] Courts again and again have declined to allow shareholders to bring direct claims under RICO for diminution in the value of their stock.  *See, e.g., Manson v. Stacescu*, 11 F.3d 1127, 1131-32 (2d Cir. 1993); *Adams-Lundy v. Association of Professional Flight Attendants*, 844 F.2d 245, 250 (5th Cir. 1988); *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 29-30 (1st Cir. 1987); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 849 (2d Cir. 1986); *Warren v. Manufacturers Nat'l Bank of Detroit*, 759 F.2d 542, 544 (6th Cir. 1985).

1   258, 268, 112 S. Ct. 1311, 1317, 117 L. Ed. 2d 532 (1992). Any alleged investment

2   losses were caused by intervening events, including publicity related to government

3   enforcement and legislative actions, and not by any actions by Mr. Gavin or Mr.

4   Sussman. *McBrearty*, 2009 WL 875220, at *3-4 (quoting *In re Am. Express Co.*

5   *Shareholder Litig.*, 39 F.3d 395, 400 (2d Cir. 1994)). Third, Plaintiff has failed to

6   allege a predicate act in violation of 18 U.S.C. § 1955 through the purchases of

7   shares in publicly-traded companies, or a "pattern of racketeering activity" under 18

8   U.S.C. § 1962(c). These arguments are set forth in detail in the CCM Defendants'

9   Memorandum, which Mr. Gavin and Mr. Sussman join in all respects and

10  incorporate herein by reference. *See* CCM Def. Memo. at Section I. [18]

11
12              **2.    Plaintiff Fails to Plead Necessary Elements Of The State
                        Law Claims Under Delaware Law**

13          The state law claims (Counts III-V, VIII, and IX) should be dismissed for

14  failure to plead an improper investment claim under Delaware law. The Delaware

15  Code provides that "[t]he propriety of an investment decision is to be determined by

16  what the fiduciary knew or should have known at the time of the decision about . .

17  [t]he inherent nature and expected performance of the investment portfolio," the

18  "purposes" of the trust, and "the general economic conditions." Del. Code Ann. tit.

19  12, § 3302(a), (c). "Any determination of liability for investment performance shall

20  consider the performance of the entire portfolio and such other factors as the

21  fiduciary considered when the investment decision was made." Del. Code Ann. tit.

22  12, § 3302(c). *See also Law v. Law*, 753 A.2d 443, 449 (Del. 2000) (purpose of

23  statute is "the protection of the trustee").

24          The state law claims against Mr. Gavin and Mr. Sussman (Counts III-V, VIII,

25

26  ───────────────
    [18] The failure to allege any wrongdoing which constitutes the proximate cause
    under RICO also undermines the causation required for Plaintiff's state law claims,
27  including negligence. *Zerby v. Allied Signal, Inc.*, No. 00C-07-068-FSS, 2001 WL
    112052, at *6 (Del. Feb. 2, 2001); *Sims v. Stanley*, 945 A.2d 1168, 2008 WL
28  853538, at *2 (Del. Apr. 1, 2008).

1   and IX) do not satisfy this standard. The Complaint fails to allege that Mr. Gavin

2   and Mr. Sussman, as independent, non-management trustees, knew that investments

3   in gaming businesses might prove too risky in light of the Fund's other holdings.

4   The Complaint also references no plausible facts that Mr. Gavin or Mr. Sussman

5   should have foreseen the government's enforcement activities targeting Internet

6   gaming. The Court may not use the benefits of hindsight to review Mr. Gavin's

7   and Mr. Sussman's alleged conduct. *Law,* 753 A.2d at 449; *Wilmington Trust Co.*

8   *v. Coulter,* 200 A.2d 441, 448-50 (Del. 1964).

9        The Complaint also fails to plead that any risk taken with respect to the

10  investments at issue was inconsistent with Fund objectives, in light of the Fund's

11  overall portfolio. In fact, the Complaint says nothing about the nature or

12  performance of the Fund's overall portfolio. Plaintiff does not show that the

13  decline in stock price of any gaming business had a material impact on the overall

14  value of the Fund's shares.[19] Therefore, even assuming the truth of the Complaint,

15  Plaintiff cannot show that Mr. Gavin or Mr. Sussman breached any duty of care

16  with respect to the investments at issue.

17  **3.    The Complaint Fails to State A Claim For Corporate Waste**

18       The Complaint also fails to plead the elements of waste (Count V). Delaware

19  courts have defined "waste" to mean "an exchange of corporate assets for

20  consideration so disproportionately small as to lie beyond the range at which any

21  reasonable person might be willing to trade." *White v. Panic*, 783 A.2d 543, 554

22  (Del. 2001) (quoting *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000)). A plaintiff

23  must allege that the board "irrationally squander[ed] corporate assets – for example,

24  where the challenged transaction served no corporate purpose or where the

25

26  _____

[19] Although not necessary for purposes of deciding this motion, judicially

27  noticeable stock price histories reflect that the Fund's share prices *increased* in 2006 while gaming businesses' stock prices allegedly declined. (RJN Ex. 1 at 13

28  (2007 Annual Report) (reporting approximately $2.00 increase in net asset value per Fund share from beginning of 2006 to 2007 fiscal year)).

8002949                                      - 24 -        JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S
                                                           NOTICE OF MOTION AND MOTION TO DISMISS

                                                                           CV-09-02625 R (RCX)

1   corporation received no consideration at all." *Id.* Consequently, waste claims

2   trigger "an extreme test, very rarely satisfied by a shareholder plaintiff." *Steiner v.*

3   *Myerson*, Civ. A. No. 13139, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).

4          Here, Plaintiff does not allege that the consideration exchanged for the

5   investments at issue was "so disproportionately small as to lie beyond the range at

6   which any reasonable person might be willing to trade." *White,* 783 A.2d at 554.

7   To the contrary, Plaintiff admits that investment houses took the position that any

8   risks involved in investing in Internet casinos were "outweighed by the benefits of

9   owning shares in growing, highly profitable businesses" and that shares in such

10  businesses could "give a lift to mutual funds . . . meaning bigger returns for

11  clients." (Compl. ¶ 46.) Because the growth of a mutual fund is an entirely proper

12  corporate purpose, there was consideration received by the Trust and a "*good faith*

13  *judgment* that in the circumstances the transaction [was] worthwhile" – regardless

14  of any unreasonable risks based on hindsight. *Brehm*, 746 A.2d at 263.

15  **IV.    CONCLUSION**

16         For the foregoing reasons and the reasons set forth in the CCM Defendants'

17  Memorandum, Defendants John A. G. Gavin and Eric H. Sussman respectfully

18  submit that the Complaint should be dismissed in its entirety.  In the alternative, the

19  Court should dismiss the RICO claims and decline to exercise supplemental

20  jurisdiction over the state law claims. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th

21  Cir. 2001) (quoting 28 U.S.C. § 1367(c)(3)).

22  DATED: June 26, 2009               MUNGER, TOLLES & OLSON LLP

23

24

25                                     By:   /s/ John W. Spiegel

                                             JOHN W. SPIEGEL
26
                                       Attorneys for Defendants John A.G. Gavin
                                       Eric H. Sussman
27

28

## Bird, Robyn

| | |
|---|---|
| **From:** | cacd_ecfmail@cacd.uscourts.gov |
| **Sent:** | Friday, June 26, 2009 4:30 PM |
| **To:** | ecfnef@cacd.uscourts.gov |
| **Subject:** | Activity in Case 2:09-cv-02625-R-RC Steven H. Wodka v. Causeway Capital Management LLC et al Motion to Dismiss Case |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

## Notice of Electronic Filing

The following transaction was entered by Spiegel, John on 6/26/2009 at 4:29 PM PDT and filed on 6/26/2009

| | |
|---|---|
| **Case Name:** | Steven H. Wodka v. Causeway Capital Management LLC et al |
| **Case Number:** | 2:09-cv-2625 |
| **Filer:** | John A.G. Gavin |
| | Eric H. Sussman |
| **Document Number:** | 37 |

**Docket Text:**
**NOTICE OF MOTION AND MOTION to Dismiss Case ; *MEMORANDUM OF POINTS AND AUTHORITIES* filed by Defendants John A.G. Gavin, Eric H. Sussman. Motion set for hearing on 9/21/2009 at 10:00 AM before Judge Manuel L. Real. (Spiegel, John)**

**2:09-cv-2625 Notice has been electronically mailed to:**

Crystal Gayle Howard     choward@simmonscooper.com

Gregory P Erthal     gerthal@simmonscooper.com

John W Spiegel     john.spiegel@mto.com

Joseph H. Jay Aughtman     jay.aughtman@beasleyallen.com, ashley.locklar@beasleyallen.com, sharla.donohoe@beasleyallen.com

Kevin S Asfour     kevin.asfour@klgates.com, klgateseservice@klgates.com

Miriam Kim     miriam.kim@mto.com, robyn.bird@mto.com

Scarlette M Tuley    scarlette.tuley@beasleyallen.com

Thomas A Zaccaro    thomaszaccaro@paulhastings.com

Thomas I Sheridan , III    tsheridan@hanlyconroy.com

**2:09-cv-2625 Notice has been delivered by First Class U. S. Mail or by fax to: :**

Andrea Bierstein
Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP
415 Madison Avenue
New York, NY 10017-9998

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\birdre\Desktop\JOHN A. G. GAVIN AND ERIC H.
SUSSMAN'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS
AND AUTHORITIES.pdf
**Electronic document Stamp:**
[STAMP cacdStamp_ID=1020290914 [Date=6/26/2009] [FileNumber=8011606-0]
[36ba5394064930a4bfb14a7a8eae0a723f7d647115d0d897f51e5639c39b98835aa2
89c441ad06ff39a2ef17ad11171e42d18896a7790f87081a144d7b464442]]