JOHN W. SPIEGEL (State Bar No. 078935)
John.Spiegel@mto.com
MIRIAM KIM (State Bar No. 238230)
Miriam.Kim@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071-1560
Telephone: (213) 683-9100
Facsimile: (213) 687-3702

Attorneys for Defendants
John A. G. Gavin and Eric H. Sussman

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### CENTRAL DIVISION

| | |
|---|---|
| STEVEN H. WODKA, individually, derivatively and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CAUSEWAY CAPITAL MANAGEMENT LLC, SARA H. KETTERER, HARRY W. HARTFORD, JAMES A. DOYLE, JONATHAN P. ENG, KEVIN DURKING, TURNER SWAN, GRACIE V. FERMELIA, MARK CONE, JOHN A. G. GAVIN, and ERIC SUSSMAN,<br><br>Defendants,<br><br>- and -<br><br>CAUSEWAY CAPITAL MANAGEMENT TRUST, doing business as CAUSEWAY INTERNATIONAL VALUE FUND,<br><br>Nominal Defendant. | CASE NO. CV-09-02625 R (RCx)<br><br>**REPLY MEMORANDUM IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS**<br><br>Date: September 28, 2009<br>Time: 10:00 a.m.<br>Judge: Honorable Manuel L. Real<br>Ctrm: 8 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................. 1

II.   PLAINTIFF HAS FAILED TO SATISFY THE DEMAND
      REQUIREMENT ................................................................................. 3

      A.    Delaware Law Requires Plaintiff To Plead Particularized Facts
            Showing That Demand Is Excused ......................................................... 3

      B.    The Complaint Does Not Raise a Reasonable Doubt As To The
            Independence And Disinterest Of A Majority Of The Trustees .......... 4

      C.    Demand is Not Excused Under *Rales* ................................................... 5

      D.    Demand is Not Excused Under *Aronson* ............................................ 11

            1.    The "Mere Threat" Of Liability Does Not Challenge The
                  Independence Or Disinterestedness Of The Trustees ............... 11

                  a.    *Ryan v. Gifford* Underscores The Deficiencies Of
                        Plaintiff's Complaint ........................................................ 13

                  b.    Plaintiff's Assertion That Courts Generally Decline
                        To Excuse Demand Only When The Underlying
                        Claims Seem Implausible Is Unsupported By The
                        Law ...................................................................................... 14

            2.    The Investments Were A Valid Exercise Of Business
                  Judgment .............................................................................................. 15

      E.    Plaintiff's Vague Allegations Concerning A Purported Conflict
            With Other Funds Do Not Plead A Disabling Interest ...................... 15

III.  THE EXCULPATORY PROVISIONS ARE COGNIZABLE ON A
      MOTION TO DISMISS AND REQUIRE DISMISSAL OF THE
      CLAIMS AGAINST MESSRS. GAVIN AND SUSSMAN ...................... 17

IV.   THE COMPLAINT FAILS TO STATE AN ACTIONABLE CLAIM
      UNDER FEDERAL OR STATE LAW .................................................... 20

      A.    Plaintiff Has Failed To Allege A RICO Claim ................................... 20

      B.    The Claims For Breach Of Fiduciary Duty And Negligence Fail ...... 20

      C.    Plaintiff Has Failed To State A Claim For Waste ............................. 20

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1

2

# TABLE OF CONTENTS
## (continued)

Page

V.   PLAINTIFF'S ATTEMPT TO PURSUE DIRECT CLAIMS IN THE
       ALTERNATIVE SHOULD BE REJECTED .................................................22

VI.   CONCLUSION ............................................................................................23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Ad Hoc Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford*,
554 F. Supp. 2d 538 (D. Del. 2008) .................................................................. 19

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ...................................................................................... 19

*Belova v. Sharp*,
2008 WL 700961 (D. Or. Mar. 13, 2008) ......................................................... 19

*Boyce v. AIM Management Group, Inc.*,
2006 WL 4671324 (S.D. Tex. Sept. 29, 2006) .............................................. 5, 15

*Burks v. Lasker*,
441 U.S. 471, 99 S.Ct. 1831 (1979) ................................................................. 23

*Delta Star, Inc. v. Patton*,
76 F. Supp. 2d 617 (W.D. Pa. 1999) ................................................................ 21

*DiLorenzo v. Norton*,
2009 WL 2381327 (D.D.C. July 31, 2009) ...................................................... 13

*Fed. Deposit Ins. Corp. v. Henderson*,
849 F. Supp. 495 (E.D. Tex. 1994) .................................................................. 15

*Hamid v. Price Waterhouse*,
51 F.3d 1411 (9th Cir. 1995) ........................................................................... 23

*In re Abbott Labs. Deriv. Shareholder Litig.*,
325 F.3d 795 (7th Cir. 2003) ........................................................................... 11

*In re American Mut. Funds Fee Litig.*,
2005 WL 3989803 (C.D. Cal. Dec. 16, 2005) .................................................. 22

*In re The Brown Schools*,
368 B.R. 394 (Bankr. D. Del. 2007).................................................................. 19

*In re Citigroup Inc. Shareholder Deriv. Litig.*,
2009 WL 2610746 (S.D.N.Y. Aug. 25, 2009) .................................................. 18

*In re CTC Communications Group, Inc.*,
2007 WL 760389 (Bankr. D. Mass. 2007).......................................................... 18

*In re Evergreen Mut. Funds Fee Litig.*,
423 F. Supp. 2d 249 (S.D.N.Y. 2006) ............................................................... 15

*In re Extreme Networks, Inc. Shareholder Deriv. Litig.*,
573 F. Supp. 2d 1228 (N.D. Cal. 2008)............................................................ 18

*In re Federal Nat. Mtg. Ass'n Sec., Deriv. & ERISA Litig.*,
503 F. Supp. 2d 9 (D.D.C. 2007) ..................................................................... 11

*In re Intel Corp. Derivative Litigation*,
621 F. Supp. 2d 165 (D. Del. 2009) ......................................................... 7, 8, 18

*In re Mut. Funds Inv. Litig.*,
384 F. Supp. 2d 873 (D. Md. 2005) ....................................................... 5, 9, 10, 15

1
2

**TABLE OF AUTHORITIES**
**(continued)**

Page(s)

3

*In re Nuveen Fund Litig.*,
1996 WL 347012 (N.D. Ill. June 11, 1996) ...................................................... 10

4

*In re Tower Air, Inc.*,
416 F.3d 229 (3d Cir. 2005) .......................................................................... 19

5

*In re Veeco Instruments, Inc. Secs. Litig.*,
434 F. Supp. 2d 267 (S.D.N.Y. 2006) ............................................................ 10

6

*IT Group, Inc. v. D'Aniello*,
2005 WL 3050611 (D. Del. Nov. 15, 2005)..................................................... 18

7

*ITT Corp. Derivative Litigation*,
2009 WL 2877599 (S.D.N.Y. Sept. 8, 2009) ........................................... 7, 8, 14

8

*Jacobellis v. State Farm Fire & Cas. Co.*,
120 F.3d 171 (9th Cir. 1997) ........................................................................ 4, 8

9
10

*Jones ex rel. CSK Auto Corp. v. Jenkins*,
503 F. Supp. 2d 1325 (D. Ariz. 2007) ............................................................... 9

11

*Kanter v. Barella*,
489 F.3d 170 (3d Cir. 2007) ............................................................................... 3

12

*King v. Baldino*,
2009 WL 2750470 (D. Del. Aug. 26, 2009).................................................. 9, 14

13
14

*Lapidus v. Hecht*,
232 F.3d 679 (9th Cir. 2000) .......................................................................... 22

15

*Louisiana Municipal Police Retirement Sys. v. Blankfein*,
2009 WL 1422868 (S.D.N.Y. May 19, 2009)................................................... 18

16

*Marina Point Dev. Assoc. v. United States*,
364 F. Supp. 2d 1144 (C.D. Cal. 2005)........................................................... 23

17

*McCall v. Scott*,
239 F.3d 808 (6th Cir. 2001) .......................................................................... 11

18
19

*Resolution Trust Corp. v. Hays*,
1993 WL 302150 (W.D. Tex. Mar. 29, 1993) .................................................. 15

20

*Schneider v. Cal. Dep't. of Corr.*,
151 F.3d 1194 (9th Cir. 1998).................................................................. 4, 8, 10

21

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986)........................................................................ 23

22

*Sparling v. Hoffman Const. Co., Inc.*,
864 F.2d 635 (9th Cir. 1988).......................................................................... 22

23
24

**STATE CASES**

25
26

*Agency Rent-A-Car, Inc. v. Gateway Indus., Inc.*,
1980 WL 3040 (Del. Ch. July 21, 1980) ........................................................ 21

27
28

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984)............................................................... 4, 6, 11, 12

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Beam v. Stewart,*
845 A.2d 1040 (Del. 2004)................................................................ 13

*Brehm v. Eisner,*
746 A.2d 244 (Del. 2000).......................................................... 3, 21, 23

*Desimone v. Barrows,*
924 A.2d 908 (Del. Ch. 2007) ..................................................10, 13, 19

*Emerald Partners v. Berlin,*
726 A.2d 1215 (Del. 1999)........................................................... 17, 18

*Emerald Partners v. Berlin,*
787 A.2d 85 (Del. 2001)................................................................ 18

*Feldman v. Cutaia,*
2006 WL 920420 (Del. Ch. Apr. 5, 2006) .......................................... 14

*Guttman v. Huang,*
823 A.2d 492 (Del. Ch. 2003) ........................................................ 19

*Hollander v. Breeze Corp.,*
26 A.2d 507 (N.J. Ch. 1941) .......................................................... 21

*In re Baxter Int'l, Inc. Shareholders Litig.,*
654 A.2d 1268 (Del. Ch. 1995) ....................................................... 14

*In re Caremark International Inc. Derivative Litig.,*
698 A.2d 959 (Del. Ch. 1996) ....................................................... 8, 10

*In re Citigroup Inc. Shareholder Deriv. Litig.,*
964 A.2d 106 (Del. Ch. 2009) ...................................................8, 14, 21

*In re Freeport-McMoran Sulphur, Inc. Shareholder Litig.,*
2005 WL 1653923 (Del. Ch. June 30, 2005) ....................................... 17

*In re Guidant Shareholders Deriv. Litig.,*
841 N.E. 2d 571 (Ind. 2006)............................................................. 5

*In re infoUSA, Inc. Shareholders Litig.,*
953 A.2d 963 (Del. Ch. 2007) ......................................................... 14

*In re National Auto Credit, Inc. S'holders Litig.,*
2003 WL 139768 (Del. Ch. Jan. 10, 2003) .......................................... 14

*Kohls v. Duthie,*
791 A.2d 772 (Del. Ch. 2000) ......................................................... 14

*Malpiede v. Townson,*
780 A.2d 1074 (Del. 2001)........................................................... 18, 19

*Metro Communication Corp. BVI v. Advanced Mobilecomm Tech., Inc.,*
854 A.2d 121 (Del. Ch. 2004) ......................................................... 19

*Michelson v. Duncan,*
407 A.2d 211 (Del. 1979)............................................................... 21

*Rales v. Blasband,*
634 A.2d 927 (Del. 1993).........................................................4, 5, 6, 13

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

3

*Rothenberg v. Santa Fe Pacific Corp.*,
  1992 WL 111206 (Del. Ch. May 18, 1992) ...................................... 17

4

*Ryan v. Gifford*,
  918 A.2d 341 (Del. Ch. 2007) ............................................................ 13

5

*Sanders v. Wang*,
  1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ...................................... 15

6

*Saxe v. Brady*,
  184 A.2d 602 (Del. Ch. 1962) ........................................................... 16

7

8

*Sims v. Stanley*,
  945 A.2d 1168, 2008 WL 853538 (Del. Apr. 1, 2008) ..................... 20

9

*Steiner v. Myerson*,
  1995 WL 441999 (Del. Ch. July 19, 1995) ....................................... 21

10

*Stone ex rel. AmSouth Bancorp. v. Ritter*,
  911 A.2d 362 (Del. 2006) .................................................................. 10

11

12

*Tooley v. Donaldson, Lufkin & Jenrette*,
  845 A.2d 1031 (Del. 2004) ................................................................ 22

13

*Wood v. Baum*,
  953 A.2d 136 (Del. 2008) ............................................................ passim

14

*Zerby v. Allied Signal, Inc.*,
  2001 WL 112052 (Del. Feb. 2, 2001) ............................................... 20

15

16

*Zisawasser v. Cole & Cowan, Inc.*,
  164 Cal. App. 3d 417 (1985) ............................................................. 16

17

**STATUTES**

18

19

15 U.S.C. § 80a ............................................................................................ 4

18 U.S.C. § 1955 ................................................................................ 9, 12, 13

20

Del. Code Ann. tit. 12, § 3801(d) ......................................................... 1, 4, 5

21

**RULES**

22

23

Fed. R. Civ. P. 23.1 ...................................................................................... 3

24

**OTHER AUTHORITIES**

25

2 Principles of Corp. Governance § 7.03:  *Analysis and Recommendations*
  (Am. Law Inst. 1994-2009) ............................................................... 5

26

27

28

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.     **INTRODUCTION**

Plaintiff's 66-page opposition is completely unavailing in its effort to salvage the fatally defective Complaint in this case. It violates elementary pleading rules by attempting to add "facts" to the Complaint by purported judicial notice. It makes the frivolous argument that, if demand is not excused, Plaintiff should be permitted to proceed based on his direct claims – even though the law completely precludes shareholder direct actions where, as here, any alleged harm is derivative of harm to the Trust. It far exceeds the bounds of appropriate advocacy with baseless and outrageous accusations that John A. G. Gavin and Eric H. Sussman (the former U.S. Ambassador to Mexico and a respected UCLA academic, respectively) are "criminals" because the Fund for which they are independent trustees invested in publicly traded offshore gambling companies. And despite its excessive length, it provides no viable answer to the grounds on which Defendants have demonstrated the Complaint must be dismissed.

*First*, the Complaint does not set forth particularized facts showing that a majority of the Board of Trustees could not consider a demand in good faith. It is undisputed that four of the five Trustees that would have considered a pre-suit demand, including Messrs. Gavin and Sussman, are independent and disinterested trustees under Delaware statutory law. *See* Del. Code Ann. tit. 12, § 3801(d) (providing that an "[i]ndependent trustee" is "deemed to be independent and disinterested *for all purposes*") (emphasis added). It is also undisputed that two of the four independent trustees (Messrs. Graham and Meister) were not on the Board at the time of the securities purchases at issue and are not named in the Complaint. *See* Request for Judicial Notice in Support of Gavin and Sussman's Motion to Dismiss, filed June 26, 2009 ("RJN"), Ex. 3 at 30. Therefore, if the Court finds that Plaintiff has failed to plead particularized allegations showing that Mr. Gavin or Mr. Sussman is incapable of exercising their independent and disinterested

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1  judgment in responding to a demand, the Complaint must be dismissed.

2  In attempting to overcome his failure to plead demand futility, Plaintiff

3  makes conclusory, inflammatory and false allegations that the Defendants engaged

4  in "criminal acts" by causing the Trust to purchase allegedly "illegal" securities in

5  publicly traded businesses. *See* Corrected Opposition to Motion to Dismiss, Dkt.

6  52, filed Aug. 24, 2009 ("Opp."), at 1-3, 7. However, the Complaint does not set

7  forth a single allegation concerning any specific action, decision, or communication

8  by Mr. Gavin or Mr. Sussman. Indeed, only one paragraph in the entire Complaint

9  identifies them on an individual basis. Compl. ¶ 29 (identifying Messrs. Gavin and

10  Sussman as "members of the board of trustees of the Trust"). The Complaint also

11  does not cite a single criminal prosecution or government action taken based on

12  mere purchases of publicly traded securities. Instead, the Complaint alleges that

13  news articles, court documents, and other publicly available materials regarding

14  Internet gaming businesses, including third party gaming businesses in which the

15  Fund did not invest, demonstrates that the Trustees knew or were reckless in not

16  knowing that the investments at issue were illegal. *See* Opp. at 1-3. Plaintiff's

17  reliance on such purported "red flags" – without any allegations that Messrs. Gavin

18  and Sussman were on notice of those red flags, approved the investments at issue,

19  or had reason to foresee that the government would later deem the investments

20  illegal in the United States – does not plead particularized facts that warrant

21  depriving independent trustees of the decision to consider a demand.

22  Plaintiff also argues that the Trustees are disqualified from considering a

23  demand because the structure of the Causeway family of mutual funds creates an

24  inherent conflict of interest. *See* Opp. at 7-8. While Plaintiff goes on at some

25  length about purported subsidies of fees on behalf of two funds managed by

26  Causeway Capital Management LLC ("CCM"), he does not set forth particularized

27  facts demonstrating that the possibility that the other two funds will have to repay

28  properly incurred fees disqualifies the Trustees from responding to a demand.

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1    The claims against Messrs. Gavin and Sussman should also be dismissed on

2    the wholly independent ground that the Complaint fails to state a claim under the

3    Declaration of Trust's exculpatory provision, which is cognizable on a motion to

4    dismiss.  The Complaint sets forth no allegation of specific actions or omissions by

5    Mr. Gavin or Mr. Sussman, let alone non-exculpated claims against them.

6    Plaintiff's conclusory allegations that Messrs. Gavin and Sussman "caused" or

7    "allowed" the Trust to make the investments at issue despite purported "red flags"

8    about the legality of Internet gaming fall far short of pleading the degree of

9    culpability required to overcome the exculpatory provision.

10   Finally, as explained more fully below, the Complaint fails to state an

11   actionable claim under applicable federal and state law.[1]

12   **II.    PLAINTIFF HAS FAILED TO SATISFY THE DEMAND
13          REQUIREMENT**

14   **A.    Delaware Law Requires Plaintiff To Plead Particularized Facts
            Showing That Demand Is Excused**

15   Plaintiff does not dispute that any alleged harm is derivative of harm to the

16   Trust under Delaware law.  *See* Opp. at 7-11.  Because Plaintiff failed to make a

17   pre-suit demand on the Board, he must plead demand futility and comply "with

18   stringent requirements of factual particularity" that "differ substantially" from the

19   requirements of notice pleading.  *Brehm v. Eisner,* 746 A.2d 244, 254 (Del. 2000);

20   *see also* Fed. R. Civ. P. 23.1.  The requirement to plead demand futility is "not

21   satisfied by conclusory allegations or mere notice pleading."  *Brehm*, 746 A.2d at

22   254; *see also Kanter v. Barella*, 489 F.3d 170, 175-76 (3d Cir. 2007) ("[P]leading

23   demand futility" is an "exception[] to notice pleading that mandate[s] a heightened

24   standard requiring that facts be pleaded with particularity.").

25   Where, as here, a derivative action does not challenge a board action, a court

26   ―――――――――――――

27   [1] Defendants John A. G. Gavin and Eric H. Sussman also adopt the arguments made
     in the Reply in Support of Causeway Capital Management LLC's Motion to
     Dismiss, filed Sept. 14, 2009 ("CCM Reply") and incorporate them herein by
28   reference.

may not excuse demand unless the plaintiff pleads particularized facts sufficient to "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband,* 634 A.2d 927, 934 (Del. 1993).  When derivative plaintiffs are challenging an affirmative board decision (which is not the case here), demand must be excused under the *Aronson* test. *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).  Plaintiff does not dispute that the *Rales* test is applicable here, but claims that the Complaint also satisfies the *Aronson* test.[2]  Even if the Court finds that the *Aronson* test applies, as explained below, Plaintiff has fallen far short of both tests.

### B.   The Complaint Does Not Raise a Reasonable Doubt As To The Independence And Disinterest Of A Majority Of The Trustees

As explained in Mr. Gavin and Mr. Sussman's moving papers, the Complaint fails to plead facts creating a reasonable doubt as to the independence and disinterest of a majority of the Board.  *See* Memorandum in Support of Gavin and Sussman's Motion to Dismiss, Dkt. 37, filed June 26, 2009 ("Mem."), at 12-13. Delaware law defines by statute whether a trustee of a statutory trust is "independent and disinterested for all purposes."  Del. Code Ann. tit. 12, § 3801(d). An "[i]ndependent trustee" is a trustee who is "not an interested person" as defined in the Investment Company Act of 1940 ("ICA"), 15 U.S.C. §80a *et seq. Id.*

It is undisputed that four of the five trustees that would have considered a demand, including two who were not serving as trustees at the time that the Fund held the investments at issue, are independent trustees under Section 3801(d).  *See*

---

[2] Plaintiff makes conclusory references in the Opposition suggesting that the Board approved the investments alleged in the Complaint.  *See* Opp. at 55:17-18, 57:26. There are no allegations of board approval in the Complaint, and the Court should not consider them.  *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss."); *Jacobellis v. State Farm Fire & Cas. Co.*, 120 F.3d 171, 172 (9th Cir. 1997) (in ruling on a motion to dismiss, "[r]eview is limited to the contents of the complaint").

1  RJN Ex. 3 at 30 (listing Gavin, Sussman, Graham, and Meister as independent

2  trustees and noting that Graham and Meister have served since October 2008).

3  Plaintiff makes no attempt to plead or argue that any of these trustees are

4  "interested" persons under the ICA.  Instead, Plaintiff argues that "[s]ection 3801(d)

5  does not determine whether directors who face a conflict of interest or substantial

6  likelihood of liability should be considered interested for purposes of demand

7  futility."  Opp. at 56.

8      Plaintiff's argument ignores the plain language of § 3801(d), which expressly

9  encompasses "all purposes," and case law applying § 3801(d) in the demand futility

10  context.  *See, e.g., In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 873, 879 (D. Md.

11  2005); *Boyce v. AIM Management Group, Inc.*, 2006 WL 4671324, at *4-5 (S.D.

12  Tex. Sept. 29, 2006).  The Delaware legislature understands corporate law, and

13  there is no reason to interpret § 3801(d) contrary to its plain language.  Moreover,

14  Defendants do not suggest that § 3801(d) precludes demand futility "no matter what

15  the facts actually were."  Opp. at 56.  Instead, Section 3801(d) only precludes

16  demand futility where, as here, the facts establish that a majority of the trustees are

17  not interested persons within the meaning of the ICA.  This approach is consistent

18  with the view of the American Law Institute and a growing number of states that

19  have abolished the futility exception for the demand requirement.  *See In re*

20  *Guidant Shareholders Deriv. Litig.*, 841 N.E. 2d 571, 574 (Ind. 2006) (noting that

21  22 states have adopted universal demand statutes); 2 Principles of Corp.

22  Governance § 7.03: *Analysis and Recommendations* (Am. Law Inst. 1994-2009).

23      Even if § 3801(d) only establishes a presumption that may be overcome by

24  particularized facts showing that the Board is unable to exercise its independent and

25  disinterested business judgment, as explained in detail below, Plaintiff does not

26  come close to overcoming that presumption here.

27  **C.      Demand is Not Excused Under *Rales***

28      Plaintiff states that the *Rales* court adopted "a less stringent standard

1    requiring only that the 'underlying claims have some merit.'"  Opp. at 57:15-18

2    (quoting *Rales,* 634 A.2d at 934).  That is not the applicable test.[3]  As noted above,

3    under *Rales,* Plaintiff must plead particularized facts creating a reasonable doubt

4    that a majority of the Board "could have properly exercised its independent and

5    disinterested business judgment in responding to a demand."  *Rales,* 634 A.2d at

6    934.  Where, as here, trustees are exculpated from liability for certain conduct, the

7    plaintiff must plead "a *non-exculpated* claim against the directors based on

8    particularized facts."  *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008).

9          As explained below and in Gavin and Sussman's moving papers (Mem. at §§

10   III.B-C), Plaintiff has failed to plead a non-exculpated claim under the Declaration

11   of Trust's exculpatory provision.  Plaintiff asserts that demand is excused because

12   the Trustees, as "watchdogs" for the Fund, knew or were reckless in not knowing

13   that the investments were illegal in light of certain "red flags" in the media

14   regarding Internet gaming.  *See* Opp. at 58; Compl. ¶¶ 30, 96, 99.  Delaware law,

15   however, sets forth a very high standard for inferring knowledge from so-called

16   "red flags."  Even where there are allegations of illegal conduct, the plaintiff must

17   plead particularized allegations that the individual directors were on notice of the

18   red flags and alleged wrongdoing.  *See, e.g., Wood*, 953 A.2d at 142 (demand was

19   not excused where "the Complaint alleges many violations of federal securities and

20   tax laws" because it "[did] not plead with particularity the specific conduct in which

21   each defendant 'knowingly' engaged or that the defendants knew that such conduct

22

23   [3] Plaintiff misstates the standard by plucking this language from *Rales* out of
     context.  *See* Opp. at 57.  In *Rales*, the defendants proposed that the court adopt

24   more stringent demand requirements in double derivative cases (*i.e.,* where a
     stockholder in a parent company seeks to enforce the parent company's derivative

25   right to sue on behalf of its subsidiary).  *See Rales*, 634 A.2d at 934-35.  In
     rejecting that proposal, the *Rales* court explained that "[t]he *Aronson* test was

26   designed, in part, with the objective of preventing strike suits by requiring
     derivative plaintiffs to make *a threshold showing, through the allegation of*

27   *particularized facts, that their claims have some merit.*"  *Id.* at 934 (citing *Aronson*,
     473 A.2d at 811-12) (emphasis added).  By making this point, the court was not

28   setting forth a less stringent standard for pleading demand futility.

1   was illegal").  Plaintiff has failed to make such a showing here.

2          A very recent case, *ITT Corp. Derivative Litigation*, 2009 WL 2877599

3   (S.D.N.Y. Sept. 8, 2009) demonstrates Plaintiff's failure to plead demand futility.

4   Shareholder plaintiffs filed a derivative action against the company's board of

5   directors for breach of fiduciary duties and violations of law.  *See id.* at *1.

6   Applying Delaware law, the court held that demand was not excused even though

7   the company pleaded guilty to federal felony charges and agreed to pay over $100

8   million in criminal fines, penalties and forfeitures.  *See id.*  The court held that the

9   allegation that "the director Defendants ignored red flags of felonious Company

10  conduct" was insufficient to excuse demand because the complaint lacked specific

11  allegations regarding the individual directors, their awareness of the illegal conduct,

12  and what, if anything, they did in response.  *Id.* at *5-6.

13         In another recent case, *In re Intel Corp. Derivative Litigation*, 621 F. Supp.

14  2d 165 (D. Del. 2009), the court dismissed a shareholder plaintiff's derivative

15  claims for failure to plead, with "particularized facts," not just the existence of "a

16  number of so-called 'red-flags'" pertaining to investigations of the company's

17  alleged anticompetitive business practices, but also "*what* the Directors actually

18  knew about the 'red flags' and *how* they responded to them."  *Id.* at 174 (emphasis

19  added).  The plaintiff's flawed approach was "little more than to catalog the

20  ongoing investigations into Intel's alleged wrongdoing, and then assert that the

21  thickness of the catalog demonstrates that Intel's conduct was so egregious and

22  widespread that the Directors certainly must now face at least a 'substantial

23  likelihood' of personal liability for having ignored the 'red flags.'"  *Id.* at 175.

24         Similarly, here, the Complaint makes no specific allegations regarding what

25  individual trustees "actually knew about the 'red flags' and how they responded to

26  them."  *Id.* at 174.  Instead, Plaintiff inappropriately relies on the "'group'

27  accusation mode of pleading," alleging that the Trustees "allowed" the Trust to

28  make the investments at issue (Compl. ¶¶ 30, 99).  *ITT,* 2009 WL 2877599, at *4

1    (quoting *In re Citigroup Inc. Shareholder Deriv. Litig.*, 964 A.2d 106, 121 n.36

2    (Del. Ch. 2009)).  But there are no allegations regarding what role Mr. Gavin or Mr.

3    Sussman played in the investments at issue.  Indeed, the only allegation in the entire

4    Complaint that relates to Mr. Gavin and Mr. Sussman individually is the allegation

5    that they are "members of the board of trustees of the Trust."  Compl. ¶ 29.

6    Plaintiff asserts in the Opposition that they knew or are deemed to know about the

7    investments at issue, because they had a duty of oversight and the investments were

8    identified in the Trust's filings.  *See* Opp. at 58.[4]  However, "[t]he Board's

9    execution of [the company's] financial reports, without more is insufficient to

10   create an inference that the directors had actual or constructive knowledge of any

11   illegality."  *Wood*, 953 A.2d at 142.[5]

12        Plaintiff also alleges that the Defendants knew, or were reckless in not

13   knowing, that PartyGaming and NETeller were illegal gambling businesses because

14   of the "widely-publicized red flags waived [sic] by the international media."

15   (Compl. ¶ 99; *see also* Compl. ¶¶ 44, 58, 64.)  Just like the plaintiffs in *Wood, ITT*

16   and *Intel*, Plaintiff entirely omits particularized facts regarding what (if anything)

17   Mr. Gavin or Mr. Sussman learned about the purported "red flags" concerning

18   Internet gaming businesses, and how (if at all) they responded to those red flags.

19   *See Wood*, 953 A.2d at 143 ("Here, the Court of Chancery correctly concluded that

20   there were no cognizable 'red flags' from which it could be inferred that the

---

[4] Plaintiff requests judicial notice of the Trust's filings in an attempt to establish the Trustees' knowledge of the investments.  However, Plaintiff failed to make specific allegations regarding the Trustees' knowledge in the Complaint, and he cannot add "facts" by way of purported judicial notice.  *See Schneider*, 151 F.3d at 1197 n.1; *Jacobellis*, 120 F.3d at 172.

[5] Indeed, boards of investment companies generally do not review individual investment decisions.  Although not necessary for purposes of this motion, under the advisory agreement, CCM is responsible for making decisions to buy, sell or hold particular securities.  CCM RJN, Ex. 1 (SAI) at 78.  Even though the trustees receive reports from management on what is in the portfolio, as a general matter, the trustees are entitled to rely on what they are told by management and experts.  *Cf. In re Caremark International Inc. Derivative Litig.*, 698 A.2d 959, 968 (Del. Ch. 1996) ("Most of the decisions that a corporation, acting through its human agents, makes are, of course, not the subject of director attention.").

1  [directors]… consciously and in bad faith ignored the improprieties alleged in the

2  complaint."); *King v. Baldino*, --- F. Supp. 2d ----, 2009 WL 2750470, at *11 (D.

3  Del. Aug. 26, 2009) (demand was not excused despite company's federal

4  misdemeanor violation and agreement to pay $425 million to settle federal and state

5  Medicaid claims where, *inter alia*, there were "no facts plead indicating that

6  members of the Board were privy" to data reported in *Wall Street Journal* articles

7  and alleged by plaintiff as "a red flag warning the Board of illegal sales activities").

8  Accordingly, Plaintiff's allegations are insufficient to raise a reasonable doubt that

9  Mr. Gavin and Mr. Sussman could properly respond to a demand.

10      This result is supported by *In re Mutual Funds Investment Litigation*, 384 F.

11  Supp. 2d 873 (D. Md. 2005), which Plaintiff unsuccessfully attempts to distinguish.

12  *See* Mem. at 16-17; Opp. at 58 n.13.  *First*, Plaintiff argues that that case is

13  inapposite because it "did not involve wrongdoing that implicated a significant

14  portion of the company core activity."  Opp. at 58 n.13.  However, "[c]ourts have

15  repeatedly held that a plaintiff must allege more than that Directors should have

16  known or must have known about matters relating to the corporation's core

17  business."  *Jones ex rel. CSK Auto Corp. v. Jenkins*, 503 F. Supp. 2d 1325, 1337

18  (D. Ariz. 2007) (applying Delaware law).  Even assuming that the investments at

19  issue implicate a significant portion of the Fund's portfolio, Plaintiff has failed to

20  allege particularized allegations to demonstrate Mr. Gavin and Mr. Sussman's

21  knowledge of the purported red flags.  *Second*, Plaintiff asserts that "[t]here were no

22  publicly-available documents that specifically implicated the company in the

23  wrongdoing."  Opp. at 58-59 n.13.  The same is true here.  The publicly available

24  materials cited in the Complaint do not establish that mere securities purchases

25  constitute violations of 18 U.S.C. § 1955.  *See* Memorandum in Support of Motion

26  to Dismiss of Causeway Capital Management LLC, Dkt. 40, filed June 26, 2009

27  ("CCM Mem."), at 13-17.  *Third*, Plaintiff asserts that "[n]one of the directors" in

28  that case "were alleged to be directly involved in a conspiracy."  Opp. at 59 n.13.

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1    Similarly, here, there are no particularized facts regarding the individual trustees'

2    involvement in the alleged RICO conspiracy.  *Fourth*, Plaintiff asserts that "none of

3    the directors admitted to having direct 'oversight' and 'review' of the other

4    defendants."  *Id*.  However, a duty of oversight alone does not excuse demand.  *See*

5    *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at 880 (noting that "a failure of

6    oversight claim is 'possibly the most difficult theory in corporation law upon which

7    a plaintiff might hope to win a judgment'").[6]

8        Unlike *Mutual Funds Investment Litigation,* the cases relied upon by Plaintiff

9    are inapposite because they include particularized allegations showing that

10   individual directors were aware of the alleged improprieties or violations of law.  In

11   *In re Nuveen Fund Litig.*, 1996 WL 347012, *2, 5-6 (N.D. Ill. June 11, 1996), for

12   example, there were specific allegations regarding the directors' approval of the

13   transaction at issue and the co-defendant outside lawyers' role in advising the

14   directors of the alleged legal deficiencies of the transaction.  Similarly, in *In re*

15   *Veeco Instruments, Inc. Secs. Litig.*, 434 F. Supp. 2d 267, 277-78 (S.D.N.Y. 2006),

---

[6] There are references in the Opposition that suggest Plaintiff may be alleging that Mr. Gavin and Mr. Sussman failed to exercise proper oversight over CCM or the Trust's officers.  *See* Opp. at 58:6-8.  To the extent he is raising a failure-of-oversight theory under *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996), such a claim is not adequately alleged in the Complaint and therefore should not be considered.  *See Schneider*, 151 F.3d at 1197 n.1 ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  Even if the Court were to consider this theory, Delaware courts recognize it is "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (quoting *Caremark*, 698 A.2d at 967).  In order to prevail on a *Caremark* claim, a plaintiff must establish more than a mere violation of a duty of care; he must show that the Trustees utterly failed to implement any reporting or information system or control; or having implemented such a system, consciously failed to monitor or oversee its operations.  *Id.  See also id.* at 370 (stating that "a showing of bad faith conduct . . . is essential to establish director oversight liability"); *Desimone v. Barrows*, 924 A.2d 908, 935 (Del. Ch. 2007) ("[T]o hold directors liable for a failure in monitoring, the directors have to have acted with a state of mind consistent with a conscious decision to breach their duty of care.").  No such allegations have been pled here.  Plaintiff fails to provide particularized facts suggesting that the Trustees failed to implement control mechanisms; how the Trustees should have overseen CCM differently; or how Mr. Gavin or Mr. Sussman were involved in any alleged failure of oversight.

the plaintiff alleged specific facts showing that the audit committee knew of accounting regularities and at least nine violations of federal export control laws that "jeopardize[d] the future viability" of the company.  In *In re Abbott Labs. Deriv. Shareholder Litig.*, 325 F.3d 795, 808-09 (7th Cir. 2003)*,* the plaintiffs pointed to an "extensive paper trail," including four formal warning letters from the FDA (three of which were sent to the chairman of the board) and a consent decree imposed on the company that required payment of "the largest civil fine ever imposed by the FDA."[7]  And in *McCall v. Scott,* 239 F.3d 808, 819-20 (6th Cir. 2001), there were particularized allegations showing that widespread accounting irregularities at the company were brought to the board's attention.

In contrast, the Complaint here includes no allegations regarding what role, if any, the Trustees played in the securities purchases at issue.  There are no allegations showing that the purported red flags were brought to the attention of Mr. Gavin or Mr. Sussman, nor is there any particularized allegation showing that they had any reason to foresee that the investments at issue would be deemed illegal in the United States.  There is thus no basis to strip the Board of the presumption that it would consider a pre-suit demand in good faith.

### D.   Demand is Not Excused Under *Aronson*

Under *Aronson*, Plaintiff must plead particularized facts creating a reasonable doubt that (1) a majority of the Board is disinterested or independent or (2) the investments at issue were otherwise the product of a valid exercise of business judgment.  *Aronson*, 473 A.2d at 814.  The Complaint fails to satisfy this test.

#### 1.   The "Mere Threat" Of Liability Does Not Challenge The Independence Or Disinterestedness Of The Trustees

The first prong of the *Aronson* test relates to interested-director transactions, which are not alleged here.  *See Aronson*, 473 A.2d at 812 (explaining an interested

---

[7] *Abbott* routinely has been distinguished by federal courts applying Delaware law on the ground that it arose under Illinois law.  *See, e.g., In re Federal Nat. Mtg. Ass'n Sec., Deriv. & ERISA Litig.*, 503 F. Supp. 2d 9, 18 n.6 (D.D.C. 2007).

1  transaction as one where "directors . . . appear on both sides of a transaction [or]

2  expect to derive any personal benefit from it in the sense of self-dealing"). Plaintiff

3  argues, however, that the Trustees are not disinterested or independent because they

4  face a substantial likelihood of liability. *See* Opp. at 51.

5      In effect, Plaintiff asks this Court to rule that anytime there is "even a small

6  possibility" that trustees "might face criminal charges" – no matter how farfetched

7  the allegations – demand should be excused, because the consequences of potential

8  criminal prosecution "if it occurs are sufficiently severe." Opp. at 52. This simply

9  is not the law in Delaware. The "mere threat" that the suit may legally implicate a

10  director is insufficient to challenge the director's independence or disinterestedness.

11  *Aronson*, 473 A.2d at 815. Demand may be excused only in "rare" and "egregious"

12  cases where "board approval cannot meet the test of business judgment, and a

13  substantial likelihood of director liability therefore exists." *Id.*

14      Here, Plaintiff has pled, at most, nothing more than a "small possibility" that

15  Messrs. Gavin and Sussman could ever face any liability for the investments at

16  issue. Opp. at 52:22-23. As discussed in CCM's moving papers (CCM Mem. at

17  13-17), the Fund's purchases of shares in PartyGaming and NETeller do not

18  constitute violations of 18 U.S.C. § 1955. Plaintiff also points to no government

19  actions based on mere purchases of securities through public securities markets, let

20  alone actions against independent trustees of a mutual fund for securities purchases.

21  The only "authority" Plaintiff cites for the proposition that a substantial likelihood

22  of liability could exist here is a hearsay statement in a PartyGaming prospectus

23  about the forfeiture of advertising monies received by the Discovery Channel from

24  gaming companies. Opp. at 52 (citing Causeway RJN Ex. 2 at 50). There is simply

25  no allegation that Mr. Gavin or Mr. Sussman read prospectuses for investments in

26  general, or this one in particular. In any event, the prospectus (and forfeiture) says

27  nothing about the liability of public shareholders under § 1955 or any other law.

28

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### a. *Ryan v. Gifford* Underscores The Deficiencies Of Plaintiff's Complaint

Plaintiff relies primarily on *Ryan v. Gifford*, 918 A.2d 341 (Del. Ch. 2007). Rather than supporting Plaintiff's assertions, however, *Ryan* underscores Plaintiff's failure to plead demand futility. In *Ryan*, there were specific facts alleging "*knowing and purposeful* violations of shareholder plans and *intentionally* fraudulent public disclosures" regarding backdated option grants. *Id.* at 355 (emphasis added). The plaintiff also alleged that "three members of a board *approved* backdated options, and another board member accepted them" knowing that they were backdated. *Id.* at 356 (emphasis in original).

In contrast, the Complaint here does not allege any specific actions, omissions, or communications by Mr. Gavin or Mr. Sussman, let alone any allegations that they acted with a culpable state of mind. In similar circumstances, courts have distinguished *Ryan*. *See DiLorenzo v. Norton*, 2009 WL 2381327, at *7 & n.17 (D.D.C. July 31, 2009) (distinguishing *Ryan* and explaining that plaintiff failed to plead "that any directors issued the [backdated] options with the requisite disloyal state of mind"); *Desimone v. Barrows,* 924 A.2d 908, 931 (Del. Ch. 2007) (distinguishing *Ryan* on the ground that "plaintiff Desimone has pled no facts to suggest even the hint of a culpable state of mind on the part of any director").

Plaintiff also relies on *Ryan* to suggest that demand is excused because this action "might unearth facts that would subject [the Trustees] to further civil and criminal liability." Opp. at 52:12-16 (quoting *Ryan*, 918 A.2d at 356 n.38). However, "derivative plaintiffs are not entitled to discovery in order to demonstrate demand futility." *Beam v. Stewart,* 845 A.2d 1040, 1056 (Del. 2004); *Rales*, 634 A.2d at 934 n.10 (same). Plaintiff had the opportunity to request access to the Trust's books and records, but chose not to do so before filing this action. *See Beam,* 845 A.2d at 1056.

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1

**b.    Plaintiff's Assertion That Courts Generally Decline To Excuse Demand Only When The Underlying Claims Seem Implausible Is Unsupported By The Law**

2

3        In an attempt to distinguish the numerous cases demonstrating that demand is

4   not excused here, Plaintiff asserts that "Delaware courts generally decline to excuse

5   demand only when they determine that a plaintiff's substantive claims seem

6   implausible or obviously lacking in merit." Opp. at 53. This is simply not true. As

7   explained above, courts decline to excuse demand – even where a company admits

8   illegal conduct – where there are insufficient allegations regarding the individual

9   directors' inability to consider a demand. *See ITT*, 2009 WL 2877599, at *1, 8

10  (company pled guilty to felony charges); *King,* 2009 WL 2750470, at *11

11  (company agreed to federal misdemeanor violation); *see also Wood*, 953 A.2d at

12  142 (Del. 2008) (complaint alleged "many violations of federal securities and tax

13  laws").[8] In support of this erroneous assertion, Plaintiff relies on inapposite case

14  law where, unlike here, there were particularized allegations that the directors were

15  conflicted for purposes of responding to a demand due to bad faith and/or self-

16  interest.[9] There are no such allegations here.

17

---

18  [8] Plaintiff attempts to distinguish *In re Baxter Int'l, Inc. Shareholders Litig.*, 654
19  A.2d 1268 (Del. Ch. 1995), on the ground that the court found no "red flags" of the
    alleged illegalities. But as shown above, the purported red flags here were not
20  waved before Messrs. Gavin or Sussman. Plaintiff also argues that *In re Citigroup
    Inc. Shareholder Deriv. Litig.*, 964 A.2d 106 (Del. Ch. 2009) is distinguishable on
21  the ground that the red flags there only suggested that the directors made bad
    business decisions whereas the Complaint here alleges *ultra vires* criminal acts.
22  Opp. at 54. However, as explained above, the mere possibility that criminal
    liability may result does not excuse demand. *See ITT,* 2009 WL 2877599, at *8.
23  [9] *See In re infoUSA, Inc. Shareholders Litig.*, 953 A.2d 963, 990-91 (Del. Ch. 2007)
    (interested directors signed SEC filings "knowing that the information contained
24  therein fell far below the standards of candor expected from them"); *Feldman v.
    Cutaia,* 2006 WL 920420, at *5-6 (Del. Ch. Apr. 5, 2006) (particularized
25  allegations that a majority of the directors were financially interested in the
    challenged transactions); *In re National Auto Credit, Inc. S'holders Litig.*, 2003 WL
26  139768, at *6 (Del. Ch. Jan. 10, 2003) (alleging "a series of inter-related
    transactions that furthered [certain officers and directors'] interests at the expense
27  of all other [corporate] shareholders"); *Kohls v. Duthie,* 791 A.2d 772, 782 (Del.
    Ch. 2000) (alleging the president's self-interested usurpation of a corporate
28  opportunity to purchase shares "for next to nothing").

2.    **The Investments Were A Valid Exercise Of Business Judgment**

Plaintiff claims that "the Trustees could not possibly have exercised proper business judgment in participating in a RICO conspiracy or approving the unlawful investments alleged in the Complaint."  Opp. at 55.  As explained in CCM's Memorandum and Reply, Plaintiff has failed to state a RICO claim.  Further, Plaintiff does not allege any particularized facts that would overcome the presumption that the investments were proper.  *See* Mem. at 23-24.  "Delaware law on this point is clear: board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors."  *Wood*, 953 A.3d at 142.[10]

E.    **Plaintiff's Vague Allegations Concerning A Purported Conflict With Other Funds Do Not Plead A Disabling Interest**

Plaintiff does not dispute that membership on boards of multiple mutual funds within a family is insufficient to plead a disabling conflict.  *See* Opp. at 50:21-24; *see also Boyce,* 2006 WL 4671324, at *5-6 (S.D. Tex. Sept. 29, 2006); *In re Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249, 263 (S.D.N.Y. 2006); *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 878-79.  However, Plaintiff claims that the Trustees face an irreconcilable conflict of interest arising from the handling of fees (and related subsidies) incurred by the various funds.  The purported conflict rests on Plaintiff's conclusory allegation that "[w]ere the Plaintiff to prevail in this

---

[10] The cases relied upon by Plaintiff are not to the contrary.  In each of those cases, there were specific, factual allegations that the directors engaged in wrongful conduct.  *See Sanders v. Wang*, 1999 WL 1044880, at *1, 5 (Del. Ch. Nov. 8, 1999) (complaint alleged that the board violated a "clear, unambiguous" stock ownership plan provision limiting the number of shares it was authorized to grant); *Resolution Trust Corp. v. Hays*, 1993 WL 302150, at *5 (W.D. Tex. Mar. 29, 1993) ("the complaint [was] rife with allegations that the six loans [the officer defendant] originated contained numerous underwriting deficiencies and violated various federal and state statutes and regulations"); *Fed. Deposit Ins. Corp. v. Henderson,* 849 F. Supp. 495, 499 (E.D. Tex. 1994) (genuine issue of fact as to whether director adversely dominated the boards of directors of two failed savings and loans precluded summary judgment).  There are no specific allegations here regarding any misconduct by Mr. Gavin or Mr. Sussman.

1  litigation," the "subsidy in favor of the other two funds would cease to exist, and

2  the other two funds would be required to pay to CCM the amounts previously

3  subsidized by the Fund." (Compl. ¶ 93.)

4       Even if the Court assumes the truth of the purported subsidies (and future

5  repayment of those subsidies if Plaintiff prevails), there is no allegation the fees

6  were not properly incurred.[11] "It is a matter of common knowledge that

7  compensation for advisory services in the mutual fund industry is paid on a

8  percentage basis." *Saxe v. Brady*, 184 A.2d 602, 612 (Del. Ch. 1962) (dismissing

9  shareholder action alleging that payment to investment advisor was excessive).

10  Because the costs of managing a large fund are necessarily greater than those

11  incurred with regard to smaller funds, *see id.* at 615, there is no inherent conflict

12  posed by the allegations that subsidies are purportedly made and that 98% of the

13  fees paid to CCM are allocated to the Fund. (Compl. ¶¶ 91-93.)

14       More importantly, Plaintiff does not allege particularized facts (or cite any

15  authority) showing that the hypothetical repayment of legitimate fees (unrelated to

16  the challenged investments) incurred by the other two funds would prevent a

17  majority of the Board of Trustees from responding to a demand in good faith.

18  Plaintiff criticizes Defendants for "remain[ing] silent" on this key issue (Opp. at

19  50:20), but it is Plaintiff's (not Defendants') burden to plead a disabling interest.

20       The single case cited by Plaintiff in support of its claim that the alleged

21  subsidies pose an inherent conflict of interest does not involve mutual funds. *See In*

---

23  [11] As explained in Gavin and Sussman's moving papers (Mem. at 14 n.13), the
purported subsidy does not exist. *See also* CCM RJN Ex. 1 at 33. Nor does

24  *Zisawasser v. Cole & Cowan, Inc.*, 164 Cal. App. 3d 417, 424 (1985) demonstrate, as Plaintiff suggests, that a forfeiture of fees and repayment of subsidies would

25  occur if he prevails. The *Zisawasser* court held that forfeiture of a real estate broker's commission was *not* warranted in a breach of fiduciary duty case brought

26  by the sellers of a business for failure to disclose a loan of his commission to the buyer. *Id.* at 420, 425. Here, there is no allegation that the Trust failed to disclose

27  the purported subsidies or the securities purchases at issue. To the contrary, the Trust made proper disclosures to its investors (and the SEC), including disclosures

28  upon which Plaintiff relies. *See, e.g.,* Compl. ¶ 91 (referencing SEC filings).

1  *re Freeport-McMoran Sulphur, Inc. Shareholder Litig.*, 2005 WL 1653923 (Del.

2  Ch. June 30, 2005).  In *Freeport*, shareholders alleged that the director defendants

3  breached their fiduciary duties by approving a merger where certain directors

4  served on the boards of both companies in the merger and there were reasons to

5  doubt other directors' independence.  *Id.* at *7-8.  The court denied defendants'

6  motion for summary judgment because of a factual dispute regarding whether the

7  conflict of interest was disabling.  Here, Plaintiff acknowledges that the other two

8  funds did not purchase any of the securities at issue.  (Compl. ¶ 18.)  And there is

9  no allegation raising any doubt as to Mr. Gavin or Mr. Sussman's independence.  In

10  short, Plaintiff has failed to set forth particularized allegations demonstrating how

11  the hypothetical repayment of properly incurred fees (unrelated to the challenged

12  investments) gives rise to a disabling conflict of interest.

13  **III.   THE EXCULPATORY PROVISIONS ARE COGNIZABLE ON A**
**MOTION TO DISMISS AND REQUIRE DISMISSAL OF THE**
14  **CLAIMS AGAINST MESSRS. GAVIN AND SUSSMAN**

15  Plaintiff has failed to allege an actionable claim under the Declaration of

16  Trust's exculpatory provision.  *See* Mem. at 19-22.  Plaintiff offers only two

17  responses: (1) that an exculpatory provision is an affirmative defense that may not

18  be raised on a motion to dismiss; and (2) that any contract purporting to exculpate a

19  party for liability under RICO would be contrary to public policy and void.  Opp. at

20  44-45.  Neither argument has merit.

21  *First*, Delaware courts have accepted exculpatory provisions as cognizable

22  defenses on a motion to dismiss.  In stating that a Section 102(b)(7) exculpatory

23  provision "is in the *nature* of an affirmative defense," the Delaware Supreme Court

24  did not state that exculpatory provisions could not be raised in the context of a

25  motion to dismiss.  *Emerald Partners v. Berlin,* 726 A.2d 1215, 1223 (Del. 1999).

26  In fact, on this very point, the *Emerald Partners* Court cited a case dismissing a

27  claim as barred by an exculpatory provisions in the context of a motion to dismiss.

28  *See Rothenberg v. Santa Fe Pacific Corp.*, 1992 WL 111206, at *4-5 (Del. Ch. May

18, 1992).

The Delaware Supreme Court cleared up any confusion in *Malpiede v. Townson*, 780 A.2d 1074 (Del. 2001) where plaintiffs argued on the basis of the "nature of an affirmative defense" language that the trial court had erroneously dismissed their due care claims. *See id.* at 1092-94. The Court rejected plaintiffs' argument and noted, "as guidance for future cases," that "[t]he Section 102(b)(7) bar may be raised on a Rule 12(b)(6) motion to dismiss (with or without the filing of an answer)." *Id.* at 1092 (noting that its decision "is not inconsistent with *Emerald Partners*"); *see also Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. 2001) (citing *Malpiede* approvingly). Indeed, in *IT Group, Inc. v. D'Aniello*, 2005 WL 3050611, at *11 (D. Del. Nov. 15, 2005) – cited by plaintiff – the court dismissed the breach of duty of care claims as barred by an exculpatory provision.

In the context of demand futility, the issue of exculpation is not an affirmative defense as all. Exculpatory clauses may be judicially noticed. *See, e.g., Louisiana Municipal Police Retirement Sys. v. Blankfein*, 2009 WL 1422868, at *7 (S.D.N.Y. May 19, 2009). And it is a plaintiff's burden to plead particularized facts supporting a plausible claim of director liability for non-exculpated conduct. *Cf. Wood*, 953 A.2d at 141 ("Where directors are contractually or otherwise exculpated from liability for certain conduct, then a serious threat of liability may only be found to exist if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts."). *Accord In re Citigroup Inc. Shareholder Deriv. Litig.*, 2009 WL 2610746, at *5-6 (S.D.N.Y. Aug. 25, 2009) (applying Delaware law and reaching same result); *In re Extreme Networks, Inc. Shareholder Deriv. Litig.*, 573 F. Supp. 2d 1228, 1239 (N.D. Cal. 2008) (same); *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 171 (D. Del. 2009) (same).[12]

---

[12] The cases relied upon by Plaintiff are inapposite. In *In re CTC Communications Group, Inc.*, 2007 WL 760389, at *5 (Bankr. D. Mass. 2007), the court recognized the dismissal of claims pursuant to an exculpatory provision in *Malpiede* but did not dismiss on that basis due to a factual dispute concerning the applicability of the provision to a cause of action brought by a *litigation trust* on behalf of *creditors*.

1    *Second*, Plaintiff argues that the Complaint alleges that the Trustees engaged

2    in acts that constitute "bad faith, gross negligence, willful misfeasance, reckless

3    disregard of duty, and violation of [the] duty of loyalty" that are not protected by

4    the exculpatory provision. Opp. at 46. As discussed above, Plaintiff relies upon so-

5    called "red flags" regarding Internet gaming without particularized allegations

6    regarding what, if anything, Mr. Gavin and Mr. Sussman knew or did.

7        The cases cited by Plaintiff demonstrate that his conclusory allegations are

8    insufficient as a matter of law to have put Mr. Gavin and Mr. Sussman on notice of

9    any wrongdoing, let alone to show that they acted with bad faith, gross negligence,

10   willful misfeasance, or reckless disregard. *See Guttman v. Huang,* 823 A.2d 492,

11   507 (Del. Ch. 2003) (rejecting a shareholder's "wholly conclusory" allegations that

12   directors had reason to know of insider trading and accounting irregularities, where

13   the plaintiffs' counsel admitted that "the complaint does not plead a single fact

14   suggesting specific red-or even yellow-flags were waved at the outside directors");

15   *Desimone,* 924 A.2d at 912 (complaint, which was based an internal memorandum

16   and on "generic facts about options backdating gleaned from newspaper articles,"

17   failed to plead demand futility); *Metro Comm. Corp. BVI v. Advanced Mobilecomm*

18   *Tech., Inc.,* 854 A.2d 121, 131 (Del. Ch. 2004) (dismissing claims against certain

19   former managers on basis of the absence of their knowledge of bribery scandal).

20   Plaintiff's conclusory allegation that the Trustees "allowed" the Trust to purchase

21   the securities at issue (Compl. ¶ 30) does not plead a non-exculpated claim, and it

22   need not be assumed true. *See Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949-50 (2009).

23

24   Here, Plaintiff does not dispute the applicability of the exculpatory provision to
     shareholders' claims. In *Belova v. Sharp,* 2008 WL 700961 (D. Or. Mar. 13, 2008),
25   the court followed the general rule that affirmative defenses are not considered on a
     motion to dismiss without citing *Malpiede.* Finally, the other cases cited by
26   Plaintiff rely upon dicta in the Third Circuit, and not Delaware law. *See Ad Hoc*
     *Comm. of Equity Holders of Tectonic Network, Inc. v. Wolford,* 554 F. Supp. 2d
27   538, 561 (D. Del. 2008) (relying upon dicta in *In re Tower Air, Inc.,* 416 F.3d 229
     (3d Cir. 2005)); *In re The Brown Schools,* 368 B.R. 394 (Bankr. D. Del. 2007)
28   (same).

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1

2

## IV.   THE COMPLAINT FAILS TO STATE AN ACTIONABLE CLAIM UNDER FEDERAL OR STATE LAW

3

4

### A.   Plaintiff Has Failed To Allege A RICO Claim

In addition to the failure to plead demand futility or a non-exculpated claim, the Complaint fails to allege an actionable RICO claim.  These arguments are set forth in detail in CCM's Memorandum and Reply.  Mr. Gavin and Mr. Sussman fully adopt those arguments and incorporate them herein by reference.

5

6

7

8

### B.   The Claims For Breach Of Fiduciary Duty And Negligence Fail

As explained in Messrs. Gavin and Sussman's moving papers, Plaintiff's state law claims fail for at least two reasons.[13]  *First*, the Complaint fails to allege proximate cause necessary for the state law claims for the same reasons that proximate cause is not adequately pled for purposes of the RICO claims.  *See* Mem. at 23 n.18 (citing *Zerby v. Allied Signal, Inc.*, 2001 WL 112052, at *6 (Del. Feb. 2, 2001); *Sims v. Stanley*, 945 A.2d 1168, 2008 WL 853538, at *2 (Del. Apr. 1, 2008)).  *Second*, Plaintiff fails to allege an improper investment claim.  *See* Mem. at 23-24.  Plaintiff argues – without supporting authority – that the alleged illegality of the investments salvages his state law claims.  Opp. at 63.  But as discussed above and in CCM's Memorandum and Reply, the Complaint fails to allege any unlawful activity, let alone misconduct by Mr. Gavin or Mr. Sussman.

9

10

11

12

13

14

15

16

17

18

19

### C.   Plaintiff Has Failed To State A Claim For Waste

Plaintiff asserts he has adequately pled a claim for waste because "using Trust assets to illegally purchase shares of unlawful gambling organizations" constitutes waste.  Opp. at 64.  Even if there were any proper allegation that Mr. Gavin or Mr. Sussman did anything illegal (which there is not), Plaintiff cites no authority for the proposition that using funds to purchase publicly traded securities constitutes waste.  Instead, the cases cited by Plaintiff apply the well-settled

20

21

22

23

24

25

26

27

28

---

[13] Contrary to Plaintiff's assertion otherwise (Opp. at 63), Defendants dispute that the Complaint alleges each of the requisite elements for breach of fiduciary duty and negligence.

1    standard that "waste entails an exchange of corporate assets for consideration so

2    disproportionately small as to lie beyond the range at which any reasonable person

3    might be willing to trade."  *Delta Star, Inc. v. Patton*, 76 F. Supp. 2d 617, 634-35

4    (W.D. Pa. 1999).  *See also Michelson v. Duncan*, 407 A.2d 211, 217 (Del. 1979)

5    (allegations that stock options were granted for "no consideration" alleged a claim

6    of waste).  This is an "extreme test, very rarely satisfied by a shareholder plaintiff."

7    *Steiner v. Myerson*, 1995 WL 441999, at *1 (Del. Ch. July 19, 1995).  "If there is

8    *any substantial* consideration . . . and if there is a *good faith judgment* that in the

9    circumstances the transaction is worthwhile, there should be no finding of waste,

10   even if the fact finder would conclude *ex post* that the transaction was unreasonably

11   risky."  *Brehm*, 746 A.2d at 263.

12        The securities at issue were purchased on publicly traded stock exchanges,

13   and Plaintiff has "alleged nothing that would explain how buying stock at the

14   market price – the price at which ordinary and rational businesspeople were trading

15   the stock – could possibly be so one sided that no reasonable and ordinary business

16   person would consider it adequate consideration."  *In re Citigroup Inc. Shareholder*

17   *Deriv. Litig.*, 964 A.2d 106, 137 (Del. Ch. 2009) (allegations of red flags failed to

18   state facts that would lead to inference that board's approval of Citigroup's

19   repurchase of its stock at market price constituted waste).[14]  At most, Plaintiff's

20   allegations show in hindsight that the securities purchases were risky business

21   decisions.  Accordingly, Plaintiff has failed to plead a claim for waste.

22

23   _____

24   [14] The cases cited by Plaintiff are distinguishable because there was evidence that
     the use of corporate assets by company officers was so one-sided that no reasonable
     person would find adequate consideration.  *See Hollander v. Breeze Corp.*, 26 A.2d
25   507, 519-20 (N.J. Ch. 1941) (directors liable for "large sums of corporate money"
     paid to president "without any itemization or supporting vouchers," in the absence
     of convincing proof of propriety of such payments); *Agency Rent-A-Car, Inc. v.*
26   *Gateway Indus., Inc.*, 1980 WL 3040, at *5 (Del. Ch. July 21, 1980) (granting
     motion to compel compliance with inspection demand where there was evidence of
27   "improper use of corporate credit cards for personal purchases" by president and
     "improper expenditures of corporate monies for female companionship").

28

## V.   **PLAINTIFF'S ATTEMPT TO PURSUE DIRECT CLAIMS IN THE ALTERNATIVE SHOULD BE REJECTED**

Plaintiff does not dispute that any alleged harm is derivative of harm to the Trust.  Indeed, Plaintiff states that "he would prefer to proceed with derivative claims only."  Opp. at 61.  However, Plaintiff asserts that "he should be allowed to proceed against Defendants based on direct claims" if the Court determines that he cannot proceed derivatively.  *Id.*  Plaintiff's attempt to pursue direct claims – absent any injury independent of harm to the Trust – is completely inconsistent with the requirements for bringing direct shareholder claims.

*First,* Plaintiff lacks standing to pursue direct relief because any alleged harm is derivative of harm to the Trust.  Under *Tooley v. Donaldson, Lufkin & Jenrette,* 845 A.2d 1031 (Del. 2004), it is well-settled that "a stockholder's claimed direct injury must be independent of any alleged injury to the corporation."  *Id.* at 1039; *see also In re American Mut. Funds Fee Litig.*, 2005 WL 3989803, at *4 (C.D. Cal. Dec. 16, 2005) ("A claim that the assets of a mutual fund have been depleted through mismanagement or other wrongdoing is one that should be brought derivatively.").  Plaintiff does not cite or address *Tooley,* and he is silent as to the allegations that attempt, but fail, to transform his derivative claims into direct claims.  *See* Mem. at 9-11.  For the reasons explained in Gavin and Sussman's moving papers (Mem. at 7-11), Plaintiff lacks standing to pursue his direct claims.

*Second,* RICO is no exception.  As Plaintiff admits, "a shareholder generally lacks standing to bring an individual action under RICO to redress injuries" to a corporation or mutual fund.  Opp. at 61:21-23 (citing *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988)).  Plaintiff makes no attempt to show that his direct RICO claim falls outside this rule.  Instead, he asserts that he should be allowed to proceed based on his direct claims if his derivative claims fail, because otherwise "RICO wrongdoing will go unpunished and RICO harm will go uncompensated."  Opp. at 62.

REPLY IN SUPPORT OF JOHN A. G. GAVIN AND ERIC H. SUSSMAN'S MOTION TO DISMISS

1    But even assuming a RICO claim might exist, it is undeniably the Trust's

2    claim, and the rationale behind the demand requirement is that "it is the

3    corporation, acting through its board of directors, which must make the decision

4    whether or not to assert the claim." *Grimes v. Donald*, 673 A.2d 1207, 1215 (Del.

5    1996), *overruled on other grounds by Brehm*, 746 A.2d 244.  The possibility that

6    the board may respond to a demand by concluding that it is in the corporation's

7    interest to allow a purported RICO violation to go "unpunished" does not somehow

8    transform a derivative claim into one that a shareholder may bring directly.  *Cf.*

9    *Burks v. Lasker*, 441 U.S. 471, 99 S.Ct. 1831 (1979) (federal courts should look to

10   state corporation law to determine whether investment company board has the

11   power to terminate nonfrivolous derivative action asserting federal law claims).

12   Plaintiff also suggests that the Court apply the proximate cause requirement

13   set forth in *Holmes* in order to allow him to proceed directly.  As explained in

14   CCM's Memorandum and Reply, the RICO claim fails for lack of proximate cause.

15   Even if Plaintiff had adequately pled proximate cause, nothing in *Holmes* confers

16   standing upon a shareholder to bring a direct RICO claim where any alleged harm

17   is derivative of harm to a mutual fund.  *See Hamid v. Price Waterhouse*, 51 F.3d

18   1411, 1419-21 (9th Cir. 1995) (depositors of insolvent bank did not have standing

19   where injuries, as those of other creditors, were derivative of bank's injuries).

20   **VI.    CONCLUSION**

21   For the foregoing reasons and the reasons set forth in Mr. Gavin and Mr.

22   Sussman's Memorandum, the Complaint should be dismissed.  Because Plaintiff

23   cannot allege "other facts consistent with" the Complaint that could "possibly cure

24   the deficienc[ies]" identified herein, Defendants John A. G. Gavin and Eric H.

25   Sussman respectfully submit that Plaintiff's request for leave to amend should be

26   denied.  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401

27   (9th Cir. 1986); *see also Marina Point Dev. Assoc. v. United States,* 364 F. Supp.

28   2d 1144, 1149 (C.D. Cal. 2005) (dismissing RICO action without leave to amend).

1    DATED: September 14, 2009          MUNGER, TOLLES & OLSON LLP

2

3                                       By: _____/s/_____
                                              JOHN W. SPIEGEL
4
                                        Attorneys for Defendants
5                                       John A. G. Gavin and Eric H. Sussman

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28